IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

In the Matter of:                                              Case No.:
GORDON HAGGOTT BECKHART, JR.                                   09-07452-8-RDD
STELLA MARIE BECKHART
    Debtors                                              Chapter 11

## PLAN OF REORGANIZATION

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), Gordon Haggott Beckhart, Jr. and Stella Marie Beckhart (collectively, "Debtors" and individually "Debtor" Gordon Haggott Beckhart, Jr. or Stella Marie Beckhart, as the context may indicate) hereby submit the following Plan of Reorganization:

## I. SUMMARY OF PLAN

The Plan contemplates a reorganization of the Debtors' debts. In accordance with the Plan, the Debtors intend to satisfy certain creditor claims from income earned through continued operations and the sale of certain assets.

The Debtors' Plan of Reorganization is based on the Debtors' belief that the interests of their creditors will be best served if they are allowed to reorganize their debts.

## II. DEFINITIONS

1.      "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

2.      "ALLOWED" shall mean (a) any Claim against the Debtors, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period set forth, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

3.      "AVAILABLE CASH" shall mean the total cash available for distribution on the Effective Date.

4.      "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title ll of the United States Code, as enacted in 1978 and thereafter amended. References

to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, et seq.

5.      "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

6.      "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

7.      "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

8.      "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. §1129.

9.      "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

10.      "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

11.      "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtors.

12.      "CREDITORS" shall mean all creditors of the Debtors holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

13.      "DEBTOR" or "DEBTORS" shall mean the Debtors identified on the first page of this Plan.

14.      "DISBURSING AGENT" shall mean George Mason Oliver, attorney, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

15.      "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

16.      "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtors as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtors, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

17.      "DISTRIBUTION DATE" shall mean the date on which distributions are

2

to be made under the Debtors' Plan.

18.     "EFFECTIVE DATE" shall be that date on which the Order Confirming Plan becomes final and non-appealable.

19.     "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

20.     "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

21.     "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

22.     "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

23.     "PETITION DATE" shall mean the date upon which the Debtors filed the voluntary Chapter 11 petition.

24.     "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

25.     "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under §507.

26.     "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

27.     "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtors, to the extent of the value of the collateral.

28.     "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtors have commenced the distribution of initial Plan payments to all creditor classes.

29.     "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to §507(a)(8).

## III.  CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The Debtors classify the following classes of claims, indicating whether said class is impaired or unimpaired, and proposes the following treatment:

**A**.     **Class 1 - Administrative Costs:**

(1)     <u>Description of Class</u>.  Class 1 consists of claims for any cost or expense of administration pursuant to Sections 503, 506, and 507 of the Bankruptcy Code.

The following claims of professionals will be paid subject to Court approval:

Oliver & Friesen, PLLC          Attorney for Debtors          To be determined by Court

(2)     <u>Impairment</u>.  This class will be impaired.

(3)     <u>Treatment</u>.     Administrative costs and expenses approved by the Court shall be paid in cash and in full including accruals to date of payment within ten days from the Effective Date of the Plan.

In the event that funds are not available to pay such costs and expenses within ten (10) days of the Effective Date of the Plan, then each holder of such a claim will receive payments from the Debtors until paid in full.  Such claims remaining unpaid ten days following the Effective Date shall accrue interest at a rate of eight percent (8%) per annum.

**B.**     **Class 2 – Ad Valorem Taxes:**

(1)     <u>Description of Class.</u>  Class 2 consists of claims for taxes owed by the Debtors to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtors based upon the value of the property assessed.  The Debtors are aware of the following claims in this Class:

| | | |
|---|---|---|
| New Hanover County, NC Tax Dept. | Claim No. 2 | $44,199.38 |
| Brunswick County, NC Revenue Dept. | Claim No. 6 | $ 1,061.44 |
| Onslow County, NC Tax Collector | | $    974.98 |
| El Paso County, CO Tax Assessor | | $      0.00 |
| Horry County, CO Treasurer's Office | | $      0.00 |
| Summit County, CO Tax Collector | | $      0.00 |

(2)     <u>Impairment</u>.    This class will be impaired.

4

(3)    Treatment.    The Debtors propose to pay the claim in this class with monthly payments over a period of five (5) years from the Effective Date.  Monthly payments shall commence on the fifteenth day of the first full month following the Effective Date, and shall include annual interest at the rate of five percent (5%) per annum.  For feasibility purposes, the Debtors estimate that monthly payments will be $872.53.  These claims shall also be paid from the proceeds of the sales of properties.

**C.    Class 3 – Tax Claims:**

(1)    Description of Class.    Class 3 consists of claims against the Debtors for income taxes, withholding taxes, unemployment taxes and/or any and all other taxes levied or entitled to be levied against the Debtors by the Internal Revenue Service or the North Carolina Department of Revenue plus interest as allowed by law. The Debtors are aware of the following claim in this class:

| | | |
|---|---|---|
| Internal Revenue Service | Claim No. 1 | $    0.00 |
| NC Department of Revenue | Claim No. 13 | $  505.55 |

(2)    Impairment. This class will be impaired.

(3)    Treatment.   The Debtors propose the following treatment:

**Costs and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date.

**Unsecured priority tax claims**, if any, described in Section 507(a)(8) of the Bankruptcy Code described in Section 507(a)(8) of the Bankruptcy Code shall be paid in full in regular monthly installments over a period not exceeding five (5) years from the Petition Date and payments shall commence on the fifteenth day of the first full month following the Effective Date, with interest at the statutory rate as of the Effective Date, currently four percent (4%) per annum.  For feasibility purposes, the Debtors estimate that payments will be in the amount of $9.31 per month.

**Secured claimants**, if any, shall retain their secured interest in the property of the Debtors.  The taxing authority shall retain its lien and secured status as to the underlying secured tax liability, plus accruing interest at the statutory rate, currently five percent (5%) per annum, from the Effective Date. Debtors shall pay these claims over a period not to exceed five (5) years from the Petition Date beginning on the fifteenth day of the first full month following the Effective Date. *The Debtors do not anticipate any such claims will be filed.*

**Unsecured general tax claims,** if any, will be treated as provided below in the section relating to "General Unsecured Claims."

**D.**    **Class 4 – AmTrust Bank (f/k/a Ohio Savings Bank) ("AmTrust"):**

(1)    Description of Class.  Class 4 consists of the following claim by AmTrust: On or about September 6, 2006, Mark A. Radlauer, Lucinda M. Radlauer, Gordon H. Beckhart, Jr. and Stella M. Beckhart executed a Deed of Trust granting Ohio Savings Bank a lien on the real property located at 108 River Gate Lane in Wilmington, North Carolina, and such Deed of Trust is recorded in Book.  AmTrust filed claim number 5 in the amount of $194,060.68.

(2)    Impairment.    This class will be impaired.

(3)    Treatment.    The above claim shall be not be treated as an obligation of the Debtors, and the Debtors shall pay nothing to this creditor.  The Debtors abandoned their one-half interest in the property to Mark A. Radlauer pursuant to an Order of the Court dated November 5, 2009.   The claim shall be paid by and considered and obligation of Mark A. Radlauer.

**E.**    **Class 5 – Brooklyn House HOA ("Brooklyn")**

(1)    Description of Class.  Class 5 consists of the following claim by Brooklyn: On or about June 15, 2009, Brooklyn filed a Claim of Lien on the office of the Clerk of Court of New Hanover County, North Carolina to secure the payment of home owners association dues.  Brooklyn filed Claim Number 7 in the amount of $3,043.00.

(2)    Impairment.    This class will be impaired.

(3)    Treatment.    The above claim shall be treated as a secured obligation of the Debtor in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b).   The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.  The Debtor shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property.  The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of four percent per annum.  During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee.  If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of four percent per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

F.      **Class 6 – Aurora Loan Services, LLC ("Aurora"):**

(1)      Description of Class.  Class 6 consists of the following claims by Aurora:

a.      Account ending in 6285:  On or about February 14, 2005, Debtor Gordon H. Beckhart, Jr. executed a Promissory Note in favor of Lumina Mortgage Company with an original principal amount of $268,000.  This Promissory Note was purportedly secured by a Deed of Trust executed by Debtors granting Lumina Mortgage Company, Inc. an interest in the Debtors' real property located at 804 Mississippi Avenue, Kure Beach, NC.  Aurora file claim Number 9 in the amount of $274,641.22.  The Debtors filed an adversary proceeding with file number 09-00264-8-RDD regarding the claim as it appears that there are certain irregularities and deficiencies in the documents supporting the claim, including, among other irregularities, the following:  the Deed of Trust identifies the borrower as "Gordon H. Beckhart and Stella M. Beckhart tenants by the entirety" and refers to a promissory note "signed by Borrower and dated _____ [the date reference is blank, it does not contain a date]."  No such promissory note signed by the Borrower identified in the Deed of Trust exists.

b.      Account Ending in 1929:  On or about February 2, 2005, Debtor Gordon H. Beckhart, Jr. executed a Promissory Note in favor of Lumina Mortgage Company with an original principal amount of $316,000.00.  This Promissory Note was purportedly secured by a Deed of Trust executed by Debtors granting Lumina Mortgage Company, Inc. an interest in the Debtors' real property located at 1713 Spot Lane, Kure Beach, NC.  Aurora file claim Number 10 in the amount of $314,630.06.  The Debtors filed an adversary proceeding with file number 09-00265-8-RDD regarding the claim, as it appears that there are certain irregularities and deficiencies in the documents supporting the claim, including, among other irregularities, the following:  the Deed of Trust identifies the borrower as "Gordon H. Beckhart and Stella M. Beckhart tenants by the entirety" and refers to a promissory note "signed by Borrower and dated _____ [the date reference is blank, it does not contain a date]."  No such promissory note signed by the Borrower identified in the Deed of Trust exists.

(2)      Impairment.  This class will be impaired.

(3)      Treatment.

a.      Account ending in 6285:  The Debtors have filed an Adversary Proceeding regarding the claim.  If successful, the claim shall be treated as a general unsecured claim of the Debtor Gordon H. Beckhart, Jr.  If Aurora prevails in the adversary proceeding, the claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b).  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.  The Debtor shall have a period not to exceed eighteen

months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property. The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of 3.125% per annum. During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee. If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of 3.125% per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

    b. Account ending in 1929: The Debtors have filed an Adversary Proceeding regarding the claim. If successful, the claim shall be treated as a general unsecured claim of the Debtor Gordon H. Beckhart, Jr. If Aurora prevails in the adversary proceeding, The above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b). The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid. The Debtor shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property. The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of 3.125% per annum. During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee. If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of 3.125% per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

    G. **Class 7 – Real Time Resolutions ("Real Time"):**

    (1) <u>Description of Class</u>. On or about October 15, 2004, Gordon H. Beckhart, Jr. and Stella M. Beckhart executed a Deed of Trust granting Lumina Mortgage Company, Inc. an interest in the Debtors' real property located at 1338 Fort Fisher Blvd., Kure Beach, NC. Real Time filed Claim No. 11 in the amount of $87,936.19 and attached the Deed of Trust to the claim.

    (2) <u>Impairment</u>. This class will be impaired.

    (3) <u>Treatment.</u> The above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of

the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b).  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.

The Debtor Gordon H. Beckhart, Jr. shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor Gordon H. Beckhart, Jr. shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property. The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of 3.875& per annum.  During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee.  If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of 3.875% per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

### H.    Class 8 – Cooperative Bank n/k/a First Bank ("Cooperative"):

(1)    Description of Class.  Class 8 consists of the following claims by Cooperative Bank:

a.    Account ending in 0376:  On or about September 21, 2006, the Debtor Gordon H. Beckhart, Jr. executed a Fixed/Adjustable Rate Note (the "602 Note") in favor of Cooperative with an original principal amount of $438,000.00.  The 602 Note was purportedly secured by a Deed of Trust executed by Debtors granting Cooperative an interest in the real property located at 602 Tennessee Avenue, Units 1 & 2, Carolina Beach, NC.  Cooperative filed Claim Number 20 in the amount of $442,254.25.  The Deed of Trust defines the "Borrowers" as "Gordon H. Beckhart, a married man and Stella M. Beckhart."

b.    Account ending in 0377:  On or about September 21, 2006, Debtor Gordon H. Beckhart, Jr. executed a Fixed/Adjustable Rate Note (the "604 Note") in favor of Cooperative with an original principal amount of $438,000.00.  The 604 Note was purportedly secured by a Deed of Trust executed by Debtors granting Cooperative an interest in the real property located at 604 Tennessee Avenue, Units 1 & 2, Carolina Beach, NC.  Cooperative filed Claim Number 21 in the amount of $442,254.25.   The Deed of Trust defines the "Borrowers" as "Gordon H. Beckhart, a married man and Stella M. Beckhart."

c.    Account ending in 0378:  On or about September 21, 2006, Debtor Gordon H. Beckhart, Jr. executed a Promissory Note  (the "600 Note") in favor of Cooperative with an original principal amount of $438,000.00.  The 600 Note was

purportedly secured by a Deed of Trust executed by Debtors granting Cooperative an interest in the real property located at 600 Tennessee Avenue, Units 1 & 2, Carolina Beach, NC.  Cooperative filed Claim Number 22 in the amount of $442,254.25.  The Deed of Trust defines the "Borrowers" as "Gordon H. Beckhart, a married man and Stella M. Beckhart."

        d.      Account ending in 0379:  On or about September 21, 2006, Debtor Gordon H. Beckhart, Jr. executed a Fixed/Adjustable Rate Note (the "606 Note") in favor of Cooperative with an original principal amount of $438,000.00.  The 606 Note was purportedly secured by a Deed of Trust executed by Debtors granting Cooperative an interest in the real property located at 606 Tennessee Avenue, Units 1 & 2, Carolina Beach, NC.  Cooperative filed Claim Number 23 in the amount of $442,254.25.  The Deed of Trust defines the "Borrowers" as "Gordon H. Beckhart, a married man and Stella M. Beckhart."

        e.      Account ending in 0380:  On or about September 21, 2006, Debtor Gordon H. Beckhart, Jr. executed a Fixed/Adjustable Rate Note (the "1109 Note") in favor of Cooperative with an original principal amount of $438,000.00.  The 1109 Note was purportedly secured by a Deed of Trust executed by Debtors granting Cooperative an interest in the real property located at 1109 Pinfish Lane, Units 1 & 2, Carolina Beach, NC.  Cooperative filed Claim Number 24 in the amount of $442,254.25.  The Deed of Trust defines the "Borrowers" as "Gordon H. Beckhart, a married man and Stella M. Beckhart."

        f.      Account ending in 0381:  On or about September 21, 2006, Debtor Gordon H. Beckhart, Jr. executed a Fixed/Adjustable Rate Note (the "1118 Note") in favor of Cooperative with an original principal amount of $438,000.00.  The 1118 Note was purportedly secured by a Deed of Trust executed by Debtors granting Cooperative an interest in the real property located at 1118 Mackerel Lane, Units 1 & 2, Carolina Beach, NC.  Cooperative filed Claim Number 25 in the amount of $444,397.06.  The Deed of Trust defines the "Borrowers" as "Gordon H. Beckhart, a married man and Stella M. Beckhart."

        g.      Account ending in 3600:  On or about September 17, 2004, each Debtor executed a Guaranty in favor of Cooperative Bank to guarantee an account of Carolina Beach Lofts, LLC with a principal balance of $5,237,500.00.  Cooperative filed Claim Number 27 in the amount of $437,487.16.

        h.      Account ending in 6600:  On or about October 23, 2008, Debtor Gordon H. Beckhart, Jr. executed a Promissory Note (the "604-614 Note") in favor of Cooperative Bank with an original principal amount of $170,000.00.  This Promissory Note was secured by a Deed of Trust executed by the Debtor Gordon H. Beckhart, Jr. granting Cooperative Bank an interest in the Debtor Gordon H. Beckhart, Jr.'s real property located at 604-614 Red Cross Street in Wilmington, NC.  Cooperative filed Claim Number 26 in the amount of $155,918.31.

      (2)    <u>Impairment</u>.  This class will be impaired

      (3)    <u>Treatment</u>.

      a.    Account Ending 0376:  The Debtors have identified a defect in the loan documents and are considering filing an adversary proceeding to set aside the deed of trust.  If the Debtors file this adversary proceeding and are successful, this claim will be treated as a general unsecured claim of the Debtor Gordon H. Beckhart, Jr.  If the Debtors decide not to file an adversary proceeding, or if Cooperative prevails in the adversary proceeding, the above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b).  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.  The Debtors shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor Gordon H. Beckhart, Jr. shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property.  The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of 4.25% per annum.  During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee.  If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of 4.25% per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

      b.    Account Ending 0377:  The Debtors have identified a defect in the loan documents and are considering filing an adversary proceeding to set aside the deed of trust.  If the Debtors file this adversary proceeding and are successful, this claim will be treated as a general unsecured claim of the Debtor Gordon H. Beckhart, Jr.  If the Debtors decide not to file an adversary proceeding, or if Cooperative prevails in the adversary proceeding, the above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b).  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.  The Debtors shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor Gordon H. Beckhart, Jr. shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property.  The Debtor will make no other payments to the creditor, and

interest shall accrue at the rate of 4.25% per annum.  During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee.  If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of 4.25% per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

          c.      Account Ending 0378:  The Debtors have identified a defect in the loan documents and are considering filing an adversary proceeding to set aside the deed of trust.  If the Debtors file this adversary proceeding and are successful, this claim will be treated as a general unsecured claim of the Debtor Gordon H. Beckhart, Jr.  If the Debtors decide not to file an adversary proceeding, or if Cooperative prevails in the adversary proceeding, the above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b).  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.  The Debtors shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor Gordon H. Beckhart, Jr. shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property.  The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of 4.25% per annum.  During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee.  If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of 4.25% per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

          d.      Account Ending 0379:  The Debtors have identified a defect in the loan documents and are considering filing an adversary proceeding to set aside the deed of trust.  If the Debtors file this adversary proceeding and are successful, this claim will be treated as a general unsecured claim of the Debtor Gordon H. Beckhart, Jr.  If the Debtors decide not to file an adversary proceeding, or if Cooperative prevails in the adversary proceeding, the above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b).  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.  The Debtors shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to

liquidate the collateral securing the claim. During this time period, the Debtor Gordon H. Beckhart, Jr. shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property. The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of 4.25% per annum. During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee. If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of 4.25% per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

e.    Account Ending 0380: The Debtors have identified a defect in the loan documents and are considering filing an adversary proceeding to set aside the deed of trust. If the Debtors file this adversary proceeding and are successful, this claim will be treated as a general unsecured claim of the Debtor Gordon H. Beckhart, Jr. If the Debtors decide not to file an adversary proceeding, or if Cooperative prevails in the adversary proceeding, the above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b). The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid. The Debtors shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor Gordon H. Beckhart, Jr. shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property. The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of 4.25% per annum. During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee. If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of 4.25% per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

f.    Account Ending 0381: The Debtors have identified a defect in the loan documents and are considering filing an adversary proceeding to set aside the deed of trust. If the Debtors file this adversary proceeding and are successful, this claim will be treated as a general unsecured claim of the Debtor Gordon H. Beckhart, Jr. If the Debtors decide not to file an adversary proceeding, or if Cooperative prevails in the adversary proceeding, the above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the

Court pursuant to Section 506(b).  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.  The Debtors shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor Gordon H. Beckhart, Jr. shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property.  The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of 4.25% per annum.  During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee.  If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of 4.25% per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

g.    Account Ending 3600:  The above claim shall be treated as a general unsecured claim of the Debtors.

h.    Account Ending in 6600:  The above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b).  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.

The Debtor Gordon H. Beckhart, Jr. shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor Gordon H. Beckhart, Jr. shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property.  The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of 3.75 % per annum.  During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee.  If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of 3.75% per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

**I.    Class 9 – BAC Loans Servicing, L.P. ("BAC):**

(1)    _Description of Class_.  Gordon H. Beckhart, Jr. executed an InterestOnly Adjustable Rate Note on a date that is uncertain.  On a date that is uncertain, Gordon H. Beckhart, Jr. and Stella M. Beckhart, Jr. executed a Deed of Trust purporting to grant Lumina Mortgage Company, Inc. an interest in the Debtor Gordon H. Beckhart, Jr.'s real

14

property located at 1338 Fort Fisher Blvd., Kure Beach, NC.  BAC has not filed a claim. The amount of the claim as of the date of the Petition was approximately $431,653.30. The Debtors filed an adversary proceeding with file number 09-07452-8-RDD regarding the claim, as it appears that there are certain irregularities and deficiencies in the documents supporting the claim, including, among other irregularities, the following:  the Deed of Trust defines "Borrower" as "Gordon H. Beckhart and Stella M. Beckhart, Husband and wife Tenancy by the Entirety".  The Deed of Trust defines the obligation secured by the Deed of Trust as "the promissory note signed by Borrower and dated _____ [the date reference is blank, it does not contain a date.]"  No promissory note signed by the "Borrower" as identified in the Deed of Trust exists.

(2)    Impairment.  This class will be impaired.

(3)    Treatment.  The Debtors have filed an Adversary Proceeding regarding the claim.  If successful, the claim shall be treated as a general unsecured claim of the Debtor Gordon H. Beckhart, Jr.  If BAC prevails in the adversary proceeding, The above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b).  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid. The Debtor shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property.  The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of 2.125% per annum.  During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee.  If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of 2.125% per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

**J.    Class 10 – PNC Financial Services Group, Inc. ("PNC"):**

(1)    Description of Class. Class 10 consists of the following claims by PNC:

a.    On or about August 28, 2007, Debtors, together with Michele B. O'Hagan and Larry Galka, executed a Deed of Trust purporting to grant National City Mortgage a security interest in the real property located at 7645-4 High Market Street in Sunset Beach, North Carolina.  PNC has not filed a claim.  The amount of the claim as of the date of the Petition was unknown.  The Debtors filed an adversary proceeding with file number 09-00262-8-RDD regarding the claim as it appears that there are certain irregularities and deficiencies in the documents supporting the claim, including, among other irregularities,

the following:  the Deed of Trust identifies the Borrower as "Gordon H. Beckhart, Stella Marie Beckhart, Michele B. O'Hagan, and Larry Galka" and refers to a promissory note "signed by Borrower and dated August 28, 2007."  No such promissory note signed by the "Borrower" identified in the Deed of Trust exists.

b.    On or about August 28, 2007, Michele B. O'Hagan executed a Fixed Rate Note and Security Agreement ("Fixed Rate Note") with National City Bank in the original principal amount of $34,100.000.  The Debtors did not execute this Fixed Rate Note.  On that same date, the Debtors, Michele B. O'Hagan and Larry Galka executed a second Deed of Trust purporting to grant National City Mortgage security interest in the real property located at 7645-4 High Market Street in Sunset Beach, North Carolina. PNC has not filed a claim and the amount owed as of the petition date was unknown.  The Debtors filed an adversary proceeding with file number 09-00262-8-RDD regarding this claim.

(2)    Impairment.  This class will be impaired.

(3)    Treatment.

a. The Debtors have filed an Adversary Proceeding regarding this claim.  If successful, the claim shall be treated as a general unsecured claim of the Debtor Gordon H. Beckhart, Jr..  If PNC prevails in the adversary proceeding, The above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b).  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.  The Debtor shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property.  The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of five percent (5%) per annum.  During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee.  If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of five percent (5%) per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

b. The Debtors have filed an Adversary Proceeding regarding this claim.  If successful, the claim shall be treated as a general unsecured claim of the Debtor Gordon H. Beckhart, Jr..  If PNC prevails in the adversary proceeding, The above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all

outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b). The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid. The Debtor shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property. The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of five percent (5%) per annum. During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee. If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of five percent (5%) per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

**K.** **Class 11 – SREI Breck, LLC ("SREI"):**

(1)  Description of Class. On or about September 12, 2008, Debtors executed a Promissory Note to SREI in the original principal amount of $1,000,000.00. This Promissory Note was secured by a Deed of Trust executed by Debtors granting SREI an interest in the Debtors' real property known as 223 Corkscrew Drive, Breckenridge, CO and by a Deed of Trust executed by the Debtors granting SREI an interest in the Debtors' real property known as 2702 Andromeda Drive, Colorado Springs, CO. SREI filed Claim No. 19 in the amount of $1,180,250.00.

(2)  Impairment. This class will be impaired.

(3)  Treatment. The above claim shall be treated as a secured obligation of the Debtors in an amount equal to the lesser of: (1) the value of the properties which secure the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b). The creditor shall retain its liens with the priorities thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.

The Debtors propose to amortize this obligation over a thirty year period with a fixed interest rate of five percent per annum. Monthly payments will begin on the 15th day of the first full month following the one year anniversary of Effective Date of the Plan, and shall continue monthly until the debt is paid in full.

The Debtors shall market 2702 Andromeda Drive for sale. The net proceeds of this sale will be paid to SREI to reduce the debt. After this payment, the monthly payments to SREI will be recalculated based upon the remaining balance owed.

**L.** **Class 12 – SunTrust Bank ("SunTrust"):**

(1)    Description of Class.  On or about February 6, 2004, the Debtor Gordon H. Beckhart, Jr. executed a Promissory Note in the original principal amount of $184,000.00.  The Promissory Note is secured by a Deed of Trust executed by Debtors granting SunTrust an interest in the real property located at 415 North Carolina Beach Ave., Carolina Beach, New Hanover County, NC.  SunTrust filed Claim No. 14 in the amount of $145,864.65.

(2)    Impairment.  This class will be impaired.

(3)    Treatment.  The above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b).  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.

The Debtors shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtors shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property.  The Debtors will make no other payments to the creditor, and interest shall accrue at the rate of five percent (5%) per annum.  During this time period, the Debtors shall keep the property taxes current and the property insured with the creditor as loss payee.  If the Debtors have not paid the claim by the end of the Marketing Period, the Debtors shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of five percent (5%) per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

**M.    Class 13 – SunTrust Mortgage**

(2)    Description of Class.  Class 13 consists of the following claims by SunTrust Mortgage:

a.    Account ending in 7325:  On or about May 5, 2005, Debtor Gordon H. Beckhart, Jr. executed an Adjustable Rate Note and Deed of Trust granting SunTrust Mortgage an interest in the real property located at 2311 South Ocean Boulevard, #1661, Myrtle Beach, SC.  SunTrust Mortgage has not filed a Claim.  The amount of the claim as of the date of the Petition was approximately $215,892.78.

b.    Account Ending in 9940:  On or about May 25, 2007, the Debtors executed a Deed of Trust granting SunTrust Mortgage an interest in the real property located at 1346 South Fort Fisher, Kure Beach, North Carolina.  SunTrust Mortgage has

not filed a Claim.  The amount of the claim as of the date of the Petition was approximately $467,500.00.

      (2)    <u>Impairment</u>.    This class will be impaired.

      (3)    <u>Treatment</u>.

    a.    Account Ending 7325: The Debtor Gordon H. Beckhart, Jr. will treat the claim as a secured obligation in an amount equal to (1) all outstanding principal and interest due on the petition date; plus (2) costs and expenses approved by the Court pursuant to Section 506(b); less (3) any post-petition payments.  The Debtor assigns a value to this Property of $181,000.00.  The creditor shall retain the secured portion of its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full.  The Debtor Gordon H. Beckhart, Jr. proposes to amortize the secured portion of this obligation over a twenty year period with a fixed interest rate of three percent per annum.  Monthly payments will begin on the 15th day of the first full month following the Effective Date of the Plan, and shall continue monthly until the secured portion of this debt is paid in full.  The unsecured portion shall be treated as a general unsecured claim of Gordon H. Beckhart, Jr., in Class 14 herein.

    b.    Account Ending 9940:  The above claim shall be treated as a secured obligation of the Debtors in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b).  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.

    The Debtors shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtors shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property.  The Debtors will make no other payments to the creditor, and interest shall accrue at the rate of five percent (5%) per annum.  During this time period, the Debtors shall keep the property taxes current and the property insured with the creditor as loss payee.  If the Debtors have not paid the claim by the end of the Marketing Period, the Debtors shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of five percent (5%) per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

    **N.**  **Class 14 – General Unsecured Claims of Gordon Haggott Beckhart, Jr.:**

      (1)    <u>Description of Class</u>. This class consists of all allowed, undisputed, non-

contingent unsecured claims listed in the Debtors' petition or as otherwise approved by the Court, of Gordon Haggot Beckhart, Jr.

(2)    <u>Impairment</u>.    This class will be impaired.

(3)    <u>Treatment</u>.    The approximate total of general unsecured claims of Gordon H. Beckhart, Jr., based on claims filed or scheduled as of the date of the filing of this Plan is $51,090.06.  The Debtor Gordon H. Beckhart, Jr. shall pay allowed claims in this class from seventy percent of the net sale proceeds of the Debtor Gordon H. Beckhart, Jr.'s real properties.  All payments to this class shall be distributed pro rata.

The Debtor may investigate and pursue avoidance actions pursuant to 11 U.S.C. §§ 547 and 548.  Any funds collected through such actions will be distributed in accordance with the priorities established by the Bankruptcy Code and Orders of this Court.

**O.    <u>Class 15 - General Unsecured Claims of Stella Marie Beckhart:</u>**

(1)    <u>Description of Class</u>.  This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtors' petition or as otherwise approved by the Court, of the Debtor Stella Marie Beckhart.

(2)    <u>Impairment</u>.  This class will be impaired.

(3)    <u>Treatment</u>.  The approximate total of general unsecured claims of Stella M. Beckhart, based on claims filed or scheduled as of the date of the filing of this Plan is $1,940.20.  The Debtor Stella M. Beckhart shall pay allowed claims in this class from seventy percent of the net sale proceeds of the Debtor Stella M. Beckhart's real properties.  All payments to this class shall be distributed pro rata.

The Debtor may investigate and pursue avoidance actions pursuant to 11 U.S.C. §§ 547 and 548.  Any funds collected through such actions will be distributed in accordance with the priorities established by the Bankruptcy Code and Orders of this Court.

**P.    <u>Class 16 - General Unsecured Claims of Gordon Haggott Beckhart, Jr. and Stella Marie Beckhart:</u>**

(1)    <u>Description of Class</u>. This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtors' petition or as otherwise approved by the Court, of Gordon Haggot Beckhart, Jr. and Stella M. Beckhart, owed jointly by the Debtors.

(2)    <u>Impairment</u>.    This class will be impaired.

(3)    Treatment.    The approximate total of joint general unsecured claims of Gordon H. Beckhart, Jr. and Stella M. Beckhart, based on claims filed or scheduled as of the date of the filing of this Plan is $44,351.00.  The Debtors shall pay allowed claims in this class from seventy percent of the net sale proceeds of the Debtors' jointly owned real properties.  All payments to this class shall be distributed pro rata.

The Debtors may investigate and pursue avoidance actions pursuant to 11 U.S.C. §§ 547 and 548.  Any funds collected through such actions will be distributed in accordance with the priorities established by the Bankruptcy Code and Orders of this Court.

## IV.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as specified herein, all contracts which exist between the Debtors and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtors and any secured creditor.  The Debtors hereby assume all leases currently in effect in which the Debtors are the lessor, except as may be otherwise specifically stated herein.

## V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

A.  The Debtors propose to make payments under the Plan from funds on hand, net proceeds from the sale of any assets, and any funds derived from the Debtors' income, including income from rental property.

B.  Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court.   Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

C.  De Minimis Distributions.  No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, the Debtors shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

D.  Unclaimed Property.  If any distribution remains unclaimed for a period of 90 days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtors for distribution in accordance with the Plan.

E.  The Debtors will execute and deliver all documentation to the Bankruptcy Court

and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

F.  The Debtors shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

G.  Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

H. Confirmation of this plan shall constitute a finding that the Debtors do not waive, release, or discharge, but rather retain and reserve any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtors' Plan.  Further, the Debtors retain all right to assert and pursue all claims under 11 U.S.C. §542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

I.  Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

J.  All objections to claims, fee applications, and adversary proceedings will be filed with the Court within 60 days of the Effective Date; provided however, that the Debtors retain the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

K.  Revocation of Plan.  The Debtors have reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order.  If the Debtors revoke or withdraw this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtors, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtors, as the case may be, or Person in any further proceedings involving such Debtors.

L.  Exemption from stamp tax or transfer tax.  Any transfers done pursuant to the confirmed Plan shall not be subject to any stamp tax orsimilar tax, pursuant to 11 U.S.C. §1146.

## VI.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, might be modified throughout the course of payment under this Plan. The Debtors, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtors.

## VII.  PROVISIONS GOVERNING DISTRIBUTIONS

A.      <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtors after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or  (ii) is not available, (iii) at the addresses reflected in the Debtors' schedules of liabilities.

B.      <u>Distribution Dates</u>.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

C.      <u>Cure Period</u>.  The failure by the Debtors to timely perform any term, provision or covenant contained in this Plan shall not constitute an Event of Default unless and until the Debtors have been given thirty (30) days written notice of the alleged default and provided an opportunity to cure.  Until the expiration of the thirty (30) day cure period, the Debtors shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes.  Such written notice pursuant to the Plan provisions and the passage of the thirty (30) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

## VIII.  ACCEPTANCE OR REJECTION OF PLAN;<br>EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.      <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.      <u>Acceptance by a Class of Creditors</u>.  Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.      <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to

vote if:

(1)     Such claim has been filed against the Debtors in a liquidated amount or has been listed on the Debtors' schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtors' schedules;

(2)     Such claim has been filed against the Debtors or listed on the Debtors' schedules and is the subject of an existing objection filed by the Debtors, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)     Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtors and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)     Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D.     <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.     <u>Acceptances Necessary to Confirm the Plan</u>.   At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtors were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.     <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any class votes against the plan, the Debtors hereby request and move the Court under the provisions of this Plan outlined in Section IX herein, for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code.  In connection therewith,

the Debtors shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2)(A).

## IX.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtors will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtors and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## X.  EFFECT OF CONFIRMATION

A.      Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtors.

B.      Injunction.  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debts or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims it may have against any party in interest.

## XI.  RELEASE OF TITLE TO PROPERTY

A.      Vehicles.  Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in bankruptcy for which the certificate of title is in the possession of the secured party, the secured party shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtors.  Confirmation of this Plan shall impose an affirmative and direct

duty on each such secured party to comply with the provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this Plan.  Such an enforcement proceeding may be filed by the Debtors in this case either before or after the closing of this case.  The Debtors specifically reserve the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

        B.    <u>Real Property</u>.  Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtors.  The failure of any such party to comply with this section shall  results in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by Section 45-36.9(c) of the N.C. General Statutes.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with this provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan.  Such an enforcement proceeding may be filed by the Debtors in this case either before or after the closing of this case.  The Debtors specifically reserve the right to file a motion to reopen this case under Section 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XII.  APPLICATION OF PLAN PAYMENTS

        A.    All payments made by the Debtors shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor.  In the event that a creditor is entitled to costs and/or attorneys fees post-petition under Section 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys fees becoming part of the creditor's allowed claim.  Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

        B.    Confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtors to the month in which they were made under the plan or directly by the Debtors, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. Section 524(i).

## XIII.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

       1.     to determine any and all objections to the allowance of claims and/or interests;

       2.     to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

       3.     to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

       4.     to determine all controversies and disputes arising under or in connection with the Plan;

       5.     to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

       6.     to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

       7.     to determine such other matters and for such other purposes as may be provided for in the confirmation order;

       8.     to determine all disputes regarding property of the estate;

       9.     to establish and adjust procedures for the orderly administration of the estate;

       10.     to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

       11.     to replace the Debtors-in-Possession with a Trustee for good cause shown.

## XIV.  MISCELLANEOUS PROVISIONS

A.     Survival of Terms.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.     <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtors, and the holders of claims and interests.

C.     <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.     <u>Further Assurance</u>.  If at any time, the Debtors shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E.     <u>Incorporation of Disclosure</u>.   All the terms and conditions of the Disclosure Statement are incorporated herein by reference.

## XV.  DISCHARGE

Upon completion of payments, the Debtors and the Estate will be discharged from all Claims and Liens which existed prior to confirmation of the Plan, and Liens, payments and distributions expressly provided for in the Plan.  The discharge will be fully effective against all Creditors regardless of whether they have voted to accept or reject the Plan and regardless of whether the Plan is confirmed by consent or by resort to the provisions of section 1129(b) of the Bankruptcy Code.  However, even though no discharge will be entered until all payments are completed, the Debtors will seek to have the case closed upon substantial consummation under § 1101(2).  Further, the Debtors will seek to have the case automatically re-opened pursuant to § 350(b) without the payment of a fee, upon the filing and service on all creditors and the Bankruptcy Administrator, of a Notice of Completion of Plan Payments and Request for Entry of Discharge, allowing all parties 20 days to file a response.

(This space intentionally left blank.)

Respectfully submitted, this the 13th day of January, 2010.

s/George Mason Oliver
GEORGE MASON OLIVER
N.C. State Bar #26587
OLIVER & FRIESEN, PLLC
P.O. Box 1548
New Bern, NC  28563-1548
(252) 633-1930
Attorneys for Debtors


s/Gordon Haggott Beckhart, Jr.
Gordon Haggott Beckhart, Jr.


s/Stella Marie Beckhart
Stella Marie Beckhart