IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | |
|---|---|
| In the Matter of: | Case No.: |
| GORDON HAGGOTT BECKHART, JR. | 09-07452-8-RDD |
| STELLA MARIE BECKHART | |
| Debtors | Chapter 11 |

## DISCLOSURE STATEMENT

Pursuant to the provisions of Section 1125(b) of the Bankruptcy Code ("Code"), the Debtors hereby submit the following information:

## I.  INTRODUCTION

### A.  Purpose of This Document

The purpose of this Disclosure Statement ("Disclosure Statement") is to provide each holder of a claim against the Debtors with adequate information about the Debtors and the Debtors' Plan of Reorganization ("Plan") so that each holder of a claim may make an informed decision about whether to accept or reject the Plan.  Attached hereto as **Exhibits "A"** and **"B"** are summaries of the Debtors' assets and liabilities. Attached as **Exhibit "C"**, **Exhibit "D,"** and **Exhibit "E"** are liquidation analyses.

*Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

This Disclosure Statement describes:

1. The Debtors and significant events during the bankruptcy case;
2. Who can vote on or object to the Plan;
3. What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
4. Why the Debtors believe the  Plan is feasible, and how the treatment of your  claim equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and
5. The effect of confirmation of the Plan.

The Plan describes:

1

1.      How the Plan proposes to treat claims of the type you hold (*i.e.*, what you will receive on your claim if the plan is confirmed); and,

2.      The classification of claims and the treatment of the classes of claims including a description of whether each class is impaired or unimpaired.

Be sure to read the Plan as well as the Disclosure Statement.  It is the Plan itself that will, if confirmed, establish your rights.

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.      *Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will be scheduled by the Court and you will receive an Order setting forth the date, time and place.

2.      *Deadline For Voting to Accept or Reject the Plan*

See information below for a discussion of voting eligibility requirements.

3.      *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the Debtors' attorney by the date set by the Court.

4.      *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact the Debtors' attorney at the address shown at the end of this Disclosure Statement.

## II.  CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

**The Debtors' Plan, which accompanies this Disclosure Statement, is incorporated herein by reference.  Section III of the Plan describes the classification of claims and the treatment of the classes of claims, including a description of whether each class is impaired or unimpaired.**

2

THE PLAN CONTEMPLATES A REORGANIZATION OF THE DEBTORS' DEBTS.  IN ACCORDANCE WITH THE PLAN, THE DEBTORS INTEND TO SATISFY CREDITOR CLAIMS FROM INCOME EARNED THROUGH CONTINUED OPERATIONS AND THE SALE OF CERTAIN ASSETS

The particular method for payment of each creditor is outlined in Section III of the Plan. All proceeds of liquidation, if any, will be distributed in accordance with the priorities of the Code and as described more fully in the Plan.

**A.        What is the Purpose of the Plan?**

As required by the Code, the Plan places claims in various classes and describes the treatment that each class will receive.  The Plan also states whether each class of claims is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.        Administrative Expenses and Tax Claims**

The following types of claims are addressed in the Plan:

1.        *Administrative Costs*

Administrative costs are costs or expenses of administering the Debtors' chapter 11 case which are allowed under § 507(a)(2) of the Code.

2.        *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five years.

**C.        Classes of Claims**

The following classes are also addressed in the Plan.  The Plan describes the proposed treatment that they will receive under the Plan:

1.        *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.   The specific classes are described in Section III of the Plan.

3

2.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

3.    *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

## III.  HISTORY

The Debtors filed a Chapter 11 petition on August 31, 2009.  The Debtors reside in Kure Beach, North Carolina and Breckenridge, Colorado.

Gordon Haggot Beckhart, Jr. is a real estate investor who has successfully developed, marketed, sold and leased real estate owned by the Debtors or entities partially or wholly owned by them in New Hanover County, North Carolina, Brunswick County, North Carolina, Horry County, South Carolina, and El Paso County, Colorado, and Summit County, Colorado.  In 2008 and 2009, the real estate market deteriorated making it difficult for the Debtors to sell their real estate.  The Debtors found themselves with significant assets and liabilities, without an adequate income stream to service the debts.  The Debtors also personally guaranteed debts of development companies wholly or partially owned by Debtors, debts far beyond their ability to repay.  The Debtors need time to adequately market their real estate in order to provide the greatest return for all of their creditors. This Chapter 11 was filed at a time when the Debtors were facing increased pressure from certain creditors. The Debtors have identified certain irregularities in some of their loan documents.  To that end, the Debtors have filed some adversary proceedings in this Court, and may file additional adversary proceedings.

## IV.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as specified herein, all contracts which exist between the Debtors and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtors and any secured creditor.  The Debtors hereby assume all leases currently in effect in which the Debtors is the lessor, except as may be otherwise specifically stated herein.

## V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

4

A. The Debtors propose to make payments under the Plan from funds on hand, net proceeds from the sale of any assets, and any funds derived from the Debtors' income, including income from rental property.

B. Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court. Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

C. De Minimis Distributions. No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, the Debtors shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

D. Unclaimed Property. If any distribution remains unclaimed for a period of 90 days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtors for distribution in accordance with the Plan.

E. The Debtors will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

F. The Debtors shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

G. Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code. No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

H. Confirmation of this plan shall constitute a finding that the Debtors do not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtors' Plan. Further, the Debtors retain all rights to assert and pursue all claims

5

under 11 U.S.C. §542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

I.  Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

J.  All objections to claims, fee applications, and adversary proceedings will be filed with the Court within 60 days of the Effective Date; provided however, that the Debtors retain the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

K.  Revocation of Plan.  The Debtors have reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order.  If the Debtors revoke or withdraw this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtors, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtors, as the case may be, or Person in any further proceedings involving such Debtors.

L.  Exemption from stamp tax or transfer tax.  Any transfers done pursuant to the confirmed Plan shall not be subject to any stamp tax or similar tax, pursuant to 11 U.S.C. §1146.

## VI.  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.  Each Impaired Class Entitled to Vote Separately.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.  Acceptance by a Class of Creditors.  Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.  Claimants Entitled to Vote.  Holders of impaired claims shall be entitled to vote if:

(1)  Such claim has been filed against the Debtors in a liquidated amount or has been listed on the Debtors' schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtors' schedules;

(2)  Such claim has been filed against the Debtors or listed on the Debtors' schedules and is the subject of an existing objection filed by the Debtors, and is temporarily allowed for voting purposes by order of the Court in accordance with

Bankruptcy Rule 3018;

(3)     Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtors and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)     Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D.     <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.     <u>Acceptances Necessary to Confirm the Plan</u>.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtors' assets were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.     <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any class votes against the plan, the Debtors hereby request and move the Court under the provisions of this Plan outlined in Section VII herein, for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code.  In connection therewith, the Debtors shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2)(A).

## VII.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtors will also request that the Court

establish a value for any assets, the value of which is in dispute between the Debtors and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## VIII.  DISCLAIMER

All parties are advised and encouraged to read this Disclosure Statement and the Plan in their entirety before voting to accept or reject the Plan or before voting on any other matter as provided for herein.

Statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan itself, the Disclosure Statement, and all exhibits annexed thereto.  The statements contained in this Disclosure Statement are made only as of the date hereof.  No assurances exist that the statements contained herein will be correct any time hereafter.

The information contained in this Disclosure Statement is included herein for purposes of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to determine how to vote on the Plan.  No representations concerning the Debtors are authorized by the Debtors other than as set forth in this Disclosure Statement.  Any other representations or inducements made to solicit your acceptance that are not contained in this Disclosure Statement should not be relied upon by you in arriving at your decision to accept or reject the Plan.

With respect to adversary proceedings, contested matters, other actions or threatened actions, this Disclosure Statement shall not constitute or be construed as an admission of any fact or liability, stipulation, or waiver; rather, this Disclosure Statement shall constitute statements made in connection with settlement negotiations.

This Disclosure Statement shall not be admissible in any non-bankruptcy proceeding involving the Debtors or any other party.  Furthermore, this Disclosure Statement shall not be construed to be conclusive advice on the legal effects, including, but not limited to the tax effects, of the Debtors' Plan of Reorganization.  You should consult your legal or tax advisor on any questions or concerns regarding the tax or other legal consequences of the Plan.

The information contained herein is not the subject of a certified audit and formal appraisals. The Debtors' records are dependent upon internal accounting methods.  As a result, valuations and liabilities are estimated.  Although substantial efforts have been made to be complete and accurate, the Debtors are unable to warrant or represent the full and complete accuracy of the information contained herein.

## IX.  PAYMENTS UNDER PLAN ARE IN FULL AND FINAL SATISFACTION OF DEBT

Except as otherwise provided in Section 1141 of the Bankruptcy Code, or the Plan, the payments and distributions made pursuant to the Plan will be in full and final satisfaction, settlement,

8

release, and discharge, as against the Debtors, of any and all claims against, and interests in, the Debtors, as defined in the Bankruptcy Code, including, without limitation, any Claim accrued or incurred on or before the Confirmation Date, whether or not (i) a proof of claim or interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such Claim or Equity Interest is allowed under Section 501 of the Bankruptcy Code, or (iii) the holder of such Claim has accepted the Plan.

## X.  POTENTIAL MATERIAL FEDERAL TAX CONSEQUENCES

The following discussion is a summary of certain federal income tax aspects of the Plan for general information only.  It should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim or Interest.  This discussion does not purport to be a complete analysis or listing of all potential tax factors.

The following discussion is based upon existing provisions of the Internal Revenue Code ("IRC"), existing regulations thereunder, and current administrative rulings and court decisions.  No assurance can be given that legislative or administrative changes or court decisions may not be forthcoming which would require significant modification of the statements expressed in this section.  Moreover, the tax consequences to holders of the Claims and Interests may vary based upon the individual tax circumstances of each such holder.  Nothing herein purports to describe any state, local or foreign tax consequences.

**NO RULING HAS BEEN SOUGHT OR OBTAINED FROM THE IRS WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN OBTAINED BY THE DEBTORS WITH RESPECT THERETO. NO REPRESENTATIONS OR ASSURANCES ARE BEING MADE WITH RESPECT TO THE FEDERAL INCOME TAX CONSEQUENCES AS DESCRIBED HEREIN.  CERTAIN TYPES OF CLAIMANTS AND INTEREST HOLDERS MAY BE SUBJECT TO SPECIAL RULES NOT ADDRESSED IN THIS SUMMARY OF FEDERAL INCOME TAX CONSEQUENCES.  THERE MAY ALSO BE STATE, LOCAL, OR FOREIGN TAX CONSIDERATIONS APPLICABLE TO A HOLDER OF A CLAIM OR INTEREST, WHICH ARE NOT ADDRESSED HEREIN.  EACH HOLDER OF A CLAIM OR INTEREST AFFECTED BY THE PLAN MUST CONSULT, AND RELY UPON, HIS OR HER OWN TAX ADVISOR REGARDING THE SPECIFIC TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO THAT HOLDER'S CLAIM OR INTEREST.  THIS INFORMATION MAY NOT BE USED OR QUOTED IN WHOLE OR IN PART IN CONNECTION WITH THE OFFERING FOR SALE OF SECURITIES.**

The Debtors are individual cash basis, calendar year taxpayers.

The bankruptcy estate of the Debtors is a separate taxpaying entity which was created upon the filing by the Debtors of a Chapter 11 petition.  The bankruptcy estate generally succeeds to an individual taxpayer's tax attributes as of the end of the taxable year preceding the year of filing.  If the Debtor elects a short taxable year, the bankruptcy estate will succeed to the Debtor's

9

tax attributes as of the end of the short taxable year. In addition, if the short taxable year is elected, any tax due for such period will be a claim against the bankruptcy estate with priority over the claims of unsecured creditors, and any refund attributable to such period will be an asset of the estate subject to the claims of the creditors. Regardless of whether the short-year election is made, the Debtor be taxed on all income earned before the filing of the Chapter 11 petition, and the bankruptcy estate will be taxed on all subsequent income through the conclusion of the case. The Debtors must make any short-year election no later than the 15th day after the fourth full month after the date of filing.

The bankruptcy estate generally is taxed as if it were an individual, except that it may choose either a calendar or a fiscal year. The Debtor will succeed to any remaining tax attributes upon the termination of the bankruptcy estate.

Certain of the Debtors' debts may be discharged for less than their full face amount under the Plan. As a result, the bankruptcy estate will recognize cancellation of indebtedness income in an amount equal to the discharged debt. This income will be excluded from the bankruptcy estate's taxable income under Section 108(a)(1)(A) of the Internal Revenue Code. To the extent there is any property remaining at the close of the year of the discharge, the bankruptcy estate will be required to reduce basis in such property (but not below zero), which will reduce or eliminate the depreciation deductions which otherwise would have been available to the Debtors in the future. To the extent the amount discharged exceeds basis in property, the bankruptcy estate will be required to reduce Debtors' other tax attributes, if any—e.g., any carried over passive activity losses and net operating losses, which would otherwise have been deductible by the Debtors against future passive income or upon a complete disposition of the property or trade or business from which the suspended losses.

Payments to be made under the Plan will produce the following income tax effects:

--Administrative expenses paid by the Debtors will be deductible by the Debtors.

--Payment of the principal portion of secured claims generally will not be deductible by the Debtors, as it has already been included in the basis of the assets securing the debt or applied towards payment of previously deducted expenses.

--Payment of interest attributable to secured claims will be deductible by the Debtors when paid.

--Payment of unsecured claims will be deductible when paid by the Debtors to the extent the payment thereof would produce a deduction outside of Chapter 11.

Any tax reported on the bankruptcy estate's income tax return(s) will be a claim against the bankruptcy estate with priority over the claims of unsecured creditors, and any refund attributable to such period will be an asset of the estate subject to the claims of creditors.

For federal income tax purposes, loan creditors who receive principal payments under the Plan generally will recognize capital gain or loss in an amount equal to the difference between the amount of the principal payments and their bases in their claim. (A creditor may have a basis in its claim which is different from the face amount of the indebtedness as a result of charge-offs, or because it acquired its claim for something other than the face amount from the original lender). Any interest payments received by creditors under the Plan will generate ordinary income to such creditors, to the extent such amounts have not already been accrued.

A loan creditor whose debt is significantly modified will be treated as having received a new debt instrument in exchange for the old one. This will be treated as a sale or exchange of the old debt for a new instrument with a value determined under IRS rules. This may result in the recognition of capital gain or loss by the creditor in an amount equal to the difference between the value of the new instrument and the creditor's basis in the claim.

Other creditors of the Debtors who receive payments under the Plan will recognize federal taxable income in a manner consistent with their methods of accounting for receipts of this nature.

Expenses incurred by creditors in connection with the Plan, such as legal, accounting and administrative costs, should be deductible by the creditors in accordance with their methods of accounting.

To the extent creditors are subject to North Carolina income tax, their treatment for state tax purposes will generally follow the federal treatment discussed above. The income tax treatment of creditors in other states other than North Carolina is beyond the scope of this disclosure statement.

**THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING OR CONSULTATION WITH A TAX ADVISOR. THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH CONSEQUENCES MAY ALSO VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OR HER OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE PLAN.**

CIRCULAR 230 NOTICE:   To comply with requirements imposed by the United States Treasure Department and/or IRS, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. A formal and thorough written tax opinion would first be required for any tax advice contained in this communication to be used to avoid tax related penalties. Please

consult your own tax professional.

## XI.  PROVISIONS FOR VOTING ON A PLAN

A.    <u>Creditors Allowed to Vote and Deadline.</u>    Creditors holding allowed claims are entitled to vote to accept or reject the Debtors' Plan of Reorganization.  The Court will fix a date by which ballots upon the proposed Plan must be filed with counsel for the Debtors, as an agent of the Court.  Even though a creditor may not choose to vote, or may vote against the Plan, the creditor will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities in each class of creditors and/or is confirmed by the Court.  Creditors who fail to vote will not be counted in determining acceptance or rejection of the Plan.  Allowance of a claim or interest for voting purposes does not necessarily mean that the claim will be allowed or disallowed for purposes of distribution under the terms of the Plan.  Any claim to which an objection has been or will be made will be allowed for distribution only after determination by the Court.  Such determination of allowed status may be made before or after the Plan is confirmed.

B.    <u>Voting Provisions.</u>    In order for the Plan to be accepted by the class of creditors holding general unsecured claims, creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in the total number of allowed claims of creditors voting on the Plan must accept the Plan.  Under certain limited circumstances more fully described in 11 U.S.C. Section 1129(b), the Court may confirm the Plan by a "cramdown" notwithstanding the rejection thereof by more than one-third (1/3) in amount or one-half (1/2) in number of the creditors voting on the Plan. The Debtors intend to seek confirmation under 11 U.S.C. Section 1129(b) in the event any class of creditors rejects the Plan.

C.    <u>Representations Limited.</u>    No representation concerning the Debtors, particularly regarding future business operations or the value of the Debtors' assets, have been authorized by the Debtors except as set forth in this statement.  You should not rely on any other representations or inducements offered to you to secure your acceptance or decide how to vote on the Plan.  Any person making representations or inducements concerning acceptance or rejection of the Plan should be reported to counsel for the Debtors.

While every effort has been made to provide the most accurate information available, the Debtors are unable to warrant or represent that all information is without inaccuracy.  No known inaccuracies are set forth herein.  Further, much of the information contained herein consists of projections of future performance.  While every effort has been made to ensure that the assumptions are valid and that the projections are as accurate as can be made under the circumstances, the Debtors have not undertaken to certify or warrant the absolute accuracy of the projections.

No formal appraisals have been undertaken of the Debtors' property for the purpose of preparing this Disclosure Statement.  The property values which were assigned and summarized below are the Debtors-in-Possession's best estimate of the values of the property as of the time of the filing of this Disclosure Statement.

## XII.  ACCEPTANCE AND CONFIRMATION

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan.  The confirmation hearing will be scheduled at a time and place to be determined by the Bankruptcy Court.  The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the confirmation hearing.

At the confirmation hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  These requirements include determinations by the Bankruptcy Court that (i) the Plan has classified Claims in a permissible manner; (ii) the Plan is in the "best interests" of all Creditors; (iii) the Plan is feasible; (iv) the Plan has been accepted by the requisite number and amount of Creditors in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances; (v) the Plan and its proponent comply with various technical requirements of the Bankruptcy Code; (vi) the Debtors have proposed the Plan in good faith; (vii) any payments made or promised in connection with the Plan are subject to the approval of the Bankruptcy Court as reasonable; and (viii) the Plan provides specified recoveries for certain priority claims.  The Debtors believe that all of these conditions have been or will be met prior to the Confirmation hearing.

A.      **Classification of Claims**.  The Bankruptcy Code requires that a plan place each creditor's claim in a class with "substantially similar" claims.  The Debtors believe that the Plan's classification of claims complies with the requirements of the Bankruptcy Code and applicable case law.

B.      **The Best Interests Test**.  Notwithstanding acceptance of the Plan in accordance with Section 1126 of the Bankruptcy Code, the Bankruptcy Court must find, whether or not any party in interest objects to Confirmation, that the Plan is in the best interests of the Creditors.  Bankruptcy courts have generally defined "best interests" as the Bankruptcy Code's requirement that, under any plan of reorganization, each member of an impaired class of creditors must receive or retain, on account of its claim, property of a value, as of the effective date of the plan, that is not less than the amount such creditor would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  The Debtors believe that the Plan is in the best interests of all Creditors.

To determine what the Creditors would receive if the Debtors were liquidated under chapter 7, the dollar amount that would be generated from the liquidation of the Debtors' assets in a chapter 7 liquidation case needs to be considered.  The amount that would be available for the satisfaction of Claims would consist of the Debtors' interest in the net proceeds resulting from the disposition of the Estate's assets, augmented by the Debtors' interest in the cash on hand.  The Estate's interest would be further reduced by the amount of any Secured Claims, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtors' business.

The costs of liquidation under chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such a trustee may engage to assist in the liquidation.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time the Case was pending under chapter 11, including compensation for the Debtors, attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtors.

For the reasons discussed above, the Debtors have concluded that the Plan provides Creditors with a recovery that has a present value at least equal to the present value of the distribution that such Person would receive if the Estate were liquidated under chapter 7 of the Bankruptcy Code.

**BECAUSE ANY LIQUIDATION ANALYSIS AND ANY PROJECTIONS WHICH MAY BE PROVIDED BY THE DEBTORS ARE BASED UPON A NUMBER OF ASSUMPTIONS AND ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES THAT ARE BEYOND THE DEBTORS' CONTROL, THERE CAN BE NO ASSURANCE THAT THE LIQUIDATION VALUES WOULD, IN FACT, BE REALIZED IN THE EVENT OF A LIQUIDATION UNDER CHAPTER 7 OR THAT THE FINANCIAL PROJECTIONS WILL BE REALIZED. ACTUAL RESULTS MAY BE HIGHER OR LOWER THAN THOSE PROJECTED, POSSIBLY BY MATERIAL AMOUNTS.**

C.    **Feasibility of the Plan**. Section 1129(a)(11) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtors or any other successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan. The Debtors believe that the Debtors will be able to meet their obligations under the Plan.

D.    **Confirmation.** The Plan may be confirmed if the holders of impaired Classes of Claims accept the Plan. Classes of Claims that are not impaired are deemed to have accepted the Plan. A Class is impaired if the legal, equitable, or contractual rights attaching to the Claims or interests of that Class are modified other than by curing defaults and reinstating maturities or by full payment in cash.

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of allowed claims in that class. This calculation includes only those holders of claims who actually vote to accept or reject the Plan. Votes on the Plan are being solicited only from holders of Allowed Claims in impaired Classes who are expected to receive distributions.

14

In the event that an impaired Class does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtors' request if (i) all other requirements of Section 1129(a) of the Bankruptcy Code are satisfied, and (ii) as to each impaired Class that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class. **THE DEBTORS BELIEVE THAT THE PLAN IS IN THE BEST INTERESTS OF ALL CREDITORS AND STRONGLY RECOMMENDS THAT ALL PARTIES ENTITLED TO VOTE CAST THEIR BALLOTS IN FAVOR OF ACCEPTING THE PLAN. THIS ENDORSEMENT IS BASED IN PART UPON THE INVOLVEMENT OF THE INVESTOR COMMITTEE.** Nevertheless, the Debtors have requested that the Bankruptcy Court confirm the Plan over the rejection of any non-accepting Class in the event all other elements of Section 1129(a) of the Bankruptcy Code are satisfied.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive. The Debtors believe that, under the Plan, all holders of impaired Claims are treated in a manner that is consistent with the treatment of other holders of Claims with which any of their legal rights are intertwined. Accordingly, the Debtors believe the Plan does not discriminate unfairly as to any impaired class of Claims.

The condition that a plan be "fair and equitable" generally requires that an impaired class that has not accepted the plan must receive certain specified recoveries, as set forth in Section 1129(b)(2) of the Bankruptcy Code. The Debtors believe that the Plan meets the thresholds specified in this section of the Bankruptcy Code.

## XIII.  EFFECT OF CONFIRMATION

A.    Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtors.

B.    <u>Injunction</u>. As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debts or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims it may have against any party in interest.

## XIV.  RECOMMENDATION AND CONCLUSION

**THE DEBTORS BELIEVE THAT THE PLAN PROVIDES THE GREATEST RECOVERY TO CREDITORS AND IS IN THE BEST INTEREST OF CREDITORS, THEREFORE, THE DEBTORS RECOMMEND THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN.**

## XV.  OTHER SOURCES OF INFORMATION AVAILABLE TO CREDITORS AND PARTIES IN INTEREST

Additional motions, affidavits, orders or other documentation which might be of interest to any holder of a claim against the Debtors in this proceeding are shown on the docket sheet maintained by the Clerk's office.  Copies of the docket sheet and actual items can be obtained from the office of the Clerk of the Bankruptcy Court:

Stephanie Edmondson, Clerk
U.S. Bankruptcy Court
1760-A Parkwood Boulevard
Wilson, NC  27893
(252) 237-0248

## XVI.  DISCHARGE

Upon completion of payments, the Debtors and the Estate will be discharged from all Claims and Liens which existed prior to confirmation of the Plan, and Liens, payments and distributions expressly provided for in the Plan.  The discharge will be fully effective against all Creditors regardless of whether they have voted to accept or reject the Plan and regardless of whether the Plan is confirmed by consent or by resort to the provisions of section 1129(b) of the Bankruptcy Code.  However, even though no discharge will be entered until all payments are completed, the Debtors will seek to have the case closed upon substantial consummation under § 1101(2).  Further, the Debtors will seek to have the case automatically re-opened pursuant to § 350(b) without the payment of a fee, upon the filing and service on all creditors and the Bankruptcy Administrator, of a Notice of Completion of Plan Payments and Request for Entry of Discharge, allowing all parties 20 days to file a response.

(This space intentionally left blank.)

Respectfully submitted, this the 13th day of January, 2010.

<div style="margin-left:40%;">

<u>s/George Mason Oliver</u>
GEORGE MASON OLIVER
N.C. State Bar #26587
OLIVER & FRIESEN, PLLC
P.O. Box 1548
New Bern, NC  28563-1548
(252) 633-1930
Attorneys for Debtors


<u>s/Gordon Haggot Beckhart, Jr.</u>
Gordon Haggot Beckhart, Jr.


<u>s/Stella Marie Beckhart</u>
Stella Marie Beckhart

</div>

**Gordon Haggot Beckhart, Jr. and Stella Marie Beckhart**
**Exhibit A Assets**

| ASSETS | | VALUE |
|---|---|---|
| **Real Property:** | | |
| 223 Corkscrew Drive, Breckenridge, CO | $ | 1,275,000.00 |
| 2702 Andromeda Drive, Colorado Springs, CO | $ | 400,000.00 |
| 618 South 3rd Street, #1, Wilmington, NC | $ | 130,000.00 |
| 1338 South Fort Fisher, Kure Beach, NC | $ | 675,000.00 |
| 2311 South Ocean Blvd., #1661, Myrtle Beach, SC | $ | 200,000.00 |
| 804 Mississippi Avenue, Kure Beach, NC | $ | 400,000.00 |
| 1713 Spot Lane, Kure Beach, NC | $ | 420,000.00 |
| 604 Red Cross Street, Wilmington, NC | $ | 300,000.00 |
| 609 and 611 Red Cross Streets, Wilmington, NC | $ | 50,000.00 |
| 709 N. 4th 101, Wilmington, NC | $ | 250,000.00 |
| 1118 Mackerel Lane, Units 1 & 2, Carolina Beach, NC | $ | 500,000.00 |
| 600 Tennessee Avenue, Units 1 & 2, Carolina Beach, NC | $ | 500,000.00 |
| 602 Tennessee Avenue, Units 1 & 2, Carolina Beach, NC | $ | 500,000.00 |
| 604 Tennessee Avenue, Units 1 & 2, Carolina Beach, NC | $ | 500,000.00 |
| 606 Tennessee Avenue, Units 1 & 1, Carolina Beach, NC | $ | 500,000.00 |
| 1109 Pinfish Lane, Units 1 & 2, Carolina Beach, NC | $ | 520,000.00 |
| 415 North Carolina Avenue, Carolina Beach, NC | $ | 400,000.00 |
| 1346 South Fort Fisher, Kure Beach, NC | $ | 600,000.00 |
| .33 acres (Lot 13 & 39), Riverside Drive, Sneads Ferry, NC | $ | 60,000.00 |
| 1/2 Undivided Interest in 108 River Gate Lane, Wilmington, NC | abandoned | |
| 1/2 Undivided Interest in 7645-4 High Market Street, Sunset Beach, NC | $ | 140,000.00 |
| | Total: $ | 8,320,000.00 |
| | | |
| **Personal Property:** | | |
| Cash on hand (as of 01/11/10) | $ | - |
| Funds in DIP accounts (as of 01/11/10) | $ | - |
| Accounts Receivable: Judgment Darron Sims ($25,583.68) | $ | - |
| Accounts Receivable: Judgment GDD, Inc. ($7,000.00) | $ | - |
| NWML Life Ins. Policy 13-995-293 (no cash value) | $ | - |
| American General Life Ins. Co. Policy YMD7049472 (no cash value) | $ | - |
| Protective Life Corporation Policy DT0263649 (no cash value) | $ | - |
| Surfboard (NC); Bikes (NC, CO), Ski Equipment (CO) | $ | 1,000.00 |
| Residence furnishings and household goods (NC Residence) | $ | 4,000.00 |
| Residence furnishings and household goods (CO Residence) | $ | 6,000.00 |
| Misc. clothing | $ | 1,500.00 |
| Various Compact Discs | $ | 400.00 |
| 100% Interest in Carolina Beach Lofts, LLC | $ | 16,500.00 |
| 1.25% Interest in Axia Capital Partners, LP (unknown value) | $ | - |
| 20% Interest in Fit-Fab Integrated Technology | $ | - |
| 1997 Infiniti QX4 (VIN JNRAR05Y1VW016835) | $ | 4,000.00 |
| 1999 BMW Z3 (VIN 4USCH9335XLG01491) | $ | 3,925.00 |
| Deposit on Myrtle Beach Property (R5 Lot 18) | $ | 25,000.00 |
| Provision patent and molds (pending) Earbud Support System (unknown value) | | |
| | Total: $ | 62,325.00 |

**Gordon Haggot Beckhart, Jr. and Stella Marie Beckhart**
**Exhibit B- Liabilities**

| | Claim # | Claim Amount | |
|---|---|---|---|
| **Class 1:  Administrative** | | | |
| Oliver & Friesen, PLLC | | To be determined by the court | |
| | | | |
| **Class 2:  Ad Valorem Taxes** | | | |
| New Hanover County, NC Tax Department | 2 | $ | 44,199.38 |
| Brunswick County, NC  Revenue Department | 6 | $ | 1,061.44 |
| El Paso County, CO Tax Assessor | | $ | - |
| Horry County CO Treasurer's Office | | $ | - |
| Summit County, CO Tax Assessor | | $ | - |
| Onslow County, NC Tax Collector | | $ | 974.98 |
| | | | |
| **Class 3:  Tax Claims** | | | |
| Internal Revenue Service | 1 | $ | - |
| North Carolina Department of Revenue | 13 | $ | 606.66 |
| | | | |
| **Class 4:  AmTrust Bank (fka Ohio Savings Bank) Acct. Ending in 3402** | 5 | $ | 194,060.68 |
| | | | |
| **Class 5:  Brooklyn House HOA** | 7 | $ | 3,043.00 |
| | | | |
| **Class 6:  Aurora Loan Services, LLC** | | | |
| Acct. Ending 6285 | 9 | $ | 274,641.22 |
| Acct. Ending 1929 | 10 | $ | 314,630.06 |
| | | | |
| **Class 7:  Real Time Resolutions Acct. Ending in 6615** | 11 | $ | 87,936.19 |
| | | | |
| **Class 8:  First Bank, as Successor to Cooperative Bank** | | | |
| Account Ending in 0381 | 25 | $ | 444,397.06 |
| Account Ending in 0378 | 22 | $ | 442,254.25 |
| Account Ending in 0376 | 20 | $ | 442,254.25 |
| Account Ending in 0377 | 21 | $ | 442,254.25 |
| Account Ending in 0379 | 23 | $ | 442,254.25 |
| Account Ending in 0380 | 24 | $ | 442,254.25 |
| Account Ending in 3600 Personal Guaranty (JOINT) | 27 | $ | 437,487.06 |
| Account Ending in 6600 | 26 | $ | 155,918.31 |
| | | | |
| **Class 9:  Countrywide (BAC) Acct. Ending In 6466** | | $ | 431,653.30 |
| | | | |
| **Class 10:  National City Mortgage (PNC) Account Ending in 4489** | | $ | - |
| | | | |
| **Class 11:  SREI Breck, LLC** | 19 | $ | 1,180,250.00 |
| | | | |
| **Class 12:  Suntrust Bank Account Ending in 7811** | 14 | $ | 145,864.65 |
| | | | |
| **Class 13:  SunTrust Mortgage** | | | |
| Account Ending in 7325 | | $ | 181,000.00 |
| Account Ending in 9940 | | $ | 467,500.00 |
| | | | |
| **Class 14:  General Unsecured Claims Gordan H. Beckhart** | | | |
| Dock St. at Seaside Village HOA | 4 | $ | 1,583.32 |
| Target National Bank Account Ending in 8554 | 8 | $ | 4,496.10 |
| Cape Fear Public Utility Authority | 15 | $ | 81.64 |
| Cape Fear Public Utility Account Ending 7340 | 17 | $ | 1,001.65 |
| Cape Fear Public Utility Account Ending in 8062 | 16 | $ | 300.81 |
| Sears Gold Mastercard Account Ending 7355 | | $ | 1,675.23 |
| Pinnacle Oceanfront HOA | 3 | | $6,957.42 |
| North Carolina Department of Revenue | 13 | | $101.11 |
| SunTrust Mortgage | | | $34,892.78 |
| | Total: | | $51,090.06 |
| | | | |
| **Class 15: General Unsecured Claims of Stella M. Beckhart** | | | |
| Manning Pest Control | | $ | 875.00 |
| New Hanover County Regional Medical Center | 12 | $ | 1,065.20 |
| | Total: | $ | 1,940.20 |
| | | | |
| **Class 16:  General Unsecured Claims of Gordan & Stella Beckhart** | | | |
| Bank of America Account Ending in 3520 | | | $29,640.00 |
| Michelle O'Hagan | | | $9,000.00 |

**Gordon Haggot Beckhart, Jr. and Stella Marie Beckhart**
**Exhibit C- Liquidation Analysis Unsecured Creditors of Gordon Haggot Beckhart, Jr.**

| ASSETS | LIENHOLDER | AMOUNT OF LIEN | MARKET VALUE | EXEMPTIONS | EQUITY |
|---|---|---|---|---|---|
| Real Property: | | | | | |
| 2311 South Ocean Blvd., #1661, Myrtle Beach, SC | SunTrust Mortgage | $ 215,892.78 | $ 181,000.00 | | $ - |
| 804 Mississippi Avenue, Kure Beach, NC | Aurora Loan Services | $ 274,641.22 | $ 400,000.00 | | $ 125,358.78 |
| 604 Red Cross Street, Wilmington, NC | First Bank, successor to Cooperative Bank | $ 155,918.31 | $ 300,000.00 | | $ 144,081.69 |
| 1118 Mackerel Lane, Units 1 & 2, Carolina Beach, NC | First Bank, successor to Cooperative Bank | $ 444,397.06 | $ 500,000.00 | | $ 55,602.94 |
| 600 Tennessee Avenue, Units 1 & 2, Carolina Beach, NC | First Bank, successor to Cooperative Bank | $ 442,254.25 | $ 500,000.00 | | $ 57,745.75 |
| 602 Tennessee Avenue, Units 1 & 2, Carolina Beach, NC | First Bank, successor to Cooperative Bank | $ 442,254.25 | $ 500,000.00 | | $ 57,745.75 |
| 604 Tennessee Avenue, Units 1 & 2, Carolina Beach, NC | First Bank, successor to Cooperative Bank | $ 442,254.25 | $ 500,000.00 | | $ 57,745.75 |
| 606 Tennessee Avenue, Units 1 & 2, Carolina Beach, NC | First Bank, successor to Cooperative Bank | $ 442,254.25 | $ 500,000.00 | | $ 57,745.75 |
| 1109 Pinfish Lane, Units 1 & 2, Carolina Beach, NC | First Bank, successor to Cooperative Bank | $ 442,254.25 | $ 520,000.00 | | $ 77,745.75 |
| 415 North Carolina Avenue, Carolina Beach, NC | SunTrust Bank | $ 145,864.65 | $ 400,000.00 | | $ 254,135.35 |
| 1/2 Undivided Interest in 108 River Gate Lane, Wilmington, NC (Abandoned) | AmTrust Bank | | | | $ - |
| 1/2 Undivided Interest in 7645-4 High Market Street, Sunset Beach, NC | National City Mortgage | $ - | $ 140,000.00 | | $ 140,000.00 |
| Total: | | $ 3,447,985.27 | $ 4,441,000.00 | $ - | $ 1,027,907.51 |
| | | | | | |
| Personal Property: | | | | | |
| Cash on hand (as of 01/11/10) | | | $ - | | $ - |
| Funds in DIP accounts (as of 01/11/10) | | | $ - | | $ - |
| Accounts Receivable: Judgment Darron Sims ($25,583.68) | | | $ - | | $ - |
| Accounts Receivable: Judgment GDD, Inc. ($7,000.00) | | | $ - | | $ - |
| NWML Life Ins. Policy 13-995-293 (no cash value) | First Bank, successor to Cooperative Bank | $ 436,797.84 | $ - | | $ - |
| American General Life Ins. Co. Policy YMD7049472 (no cash value) | | | $ - | | $ - |
| Protective Life Corporation Policy DT0263649 (no cash value) | | | $ - | | $ - |
| Surfboard (NC); Bikes (NC, CO), Ski Equipment (CO) | | | $ 1,000.00 | $ 1,000.00 | $ - |
| Residence furnishings and household goods (NC Residence) | | | $ 4,000.00 | $ 1,000.00 | $ 3,000.00 |
| Residence furnishings and household goods (CO Residence) | | | $ 6,000.00 | $ 2,000.00 | $ 4,000.00 |
| Misc. clothing | | | $ 1,500.00 | $ 1,500.00 | $ - |
| Various Compact Discs | | | $ 400.00 | $ 400.00 | $ - |
| 100% Interest in Carolina Beach Lofts, LLC | | | $ 16,500.00 | | $ 16,500.00 |
| 1.25% Interest in Axia Capital Partners, LP (unknown value) | | | $ - | | $ - |
| 20% Interest in Fit-Fab Integrated Technology | | | $ - | | $ - |
| 1997 Infiniti QX4 (VIN JNRAR05Y1VW016835) | | | $ 4,000.00 | $ 4,000.00 | $ - |
| 1999 BMW Z3 (VIN 4USCH9335XLG01491) | | | $ 3,925.00 | $ 3,925.00 | $ - |
| Deposit on Myrtle Beach Property (R5 Lot 18) | | | $ 25,000.00 | | $ 25,000.00 |
| Provision patent and molds (pending) Earbud Support System (unknown value) | | | $ - | | $ - |
| Total: | | $ 436,797.84 | $ 62,325.00 | $ 13,825.00 | $ 48,500.00 |
| | | | | | |
| Less | | | | | |
| Chapter 7 Auctioner Fees Real Property | | | | | |
| 10% of first $25,000.00 | 10% | | $ 25,000.00 | | $ (2,500.00) |
| 4% of balance | 4% | | $ 4,235,000.00 | | $ (169,400.00) |
| | | | | | |
| Trustee's Commission | | | | | |
| 25% of first $5,000 | 25% | | $ 5,000.00 | | $ (1,250.00) |
| 10% of next $5,000 to $50,000 | 10% | | $ 45,000.00 | | $ (4,500.00) |
| 3% of balance | 3% | | $ 4,210,000.00 | | $ (126,300.00) |
| | | | | | |
| Chapter 7 Auctioner Fees - Personal Prop. | | | | | |
| 20% of first $20,000 | 20% | | $ 20,000.00 | | $ (4,000.00) |
| 10% of next $50,000 | 10% | | $ 42,325.00 | | $ (4,232.50) |
| 4% of Balance | 4% | | $ - | | $ - |
| | | | | | |
| Trustee's Commission | | | | | |
| 25% of first $5,000 | 25% | | $ 5,000.00 | | $ (1,250.00) |
| 10% of next $5,000 to $50,000 | 10% | | $ 45,000.00 | | $ (4,500.00) |
| 3% of Balance | 3% | | $ 12,325.00 | | $ (369.75) |
| | | | | | |
| Chapter 11 Administrative Claims (est.) | | | | | $ (15,000.00) |
| | | | | | |
| Priority Claims | | | | | $ (46,842.46) |
| | | | | | |
| **Available for Unsecured Creditors of Gordon Haggot Beckhart, Jr.** | | | | | $ 744,762.80 |

**Gordon Haggot Beckhart, Jr. and Stella Marie Beckhart**
**Exhibit C- Liquidation Analysis Unsecured Creditors of Stella Marie Beckhart**

| ASSETS | LIENHOLDER | AMOUNT OF LIEN | MARKET VALUE | EXEMPTIONS | EQUITY |
|---|---|---|---|---|---|
| Personal Property: | | | | | |
| Cash on hand (as of 01/11/10) | | | $ - | | $ - |
| Funds in DIP accounts (as of 01/11/10) | | | $ - | | $ - |
| Accounts Receivable: Judgment GDD, Inc. ($7,000.00) | | | $ - | | $ - |
| NWML Life Ins. Policy 13-995-293 (no cash value) | First Bank, successor to Cooperative Bank | $ 436,797.84 | $ - | | $ - |
| American General Life Ins. Co. Policy YMD7049472 (no cash value) | | | $ - | | $ - |
| Protective Life Corporation Policy DT0263649 (no cash value) | | | $ - | | $ - |
| Surfboard (NC); Bikes (NC, CO), Ski Equipment (CO) | | | $ 1,000.00 | $ 1,000.00 | $ - |
| Residence furnishings and household goods (NC Residence) | | | $ 4,000.00 | $ 1,000.00 | $ 3,000.00 |
| Residence furnishings and household goods (CO Residence) | | | $ 6,000.00 | $ 2,000.00 | $ 4,000.00 |
| Misc. clothing | | | $ 1,500.00 | $ 1,500.00 | $ - |
| Various Compact Discs | | | $ 400.00 | $ 400.00 | $ - |
| 100% Interest in Carolina Beach Lofts, LLC | | | $ 16,500.00 | | $ 16,500.00 |
| 20% Interest in Fit-Fab Integrated Technology | | | $ - | | $ - |
| 1997 Infiniti QX4 (VIN JNRAR05Y1VW016835) | | | $ 4,000.00 | $ 4,000.00 | $ - |
| Deposit on Mrytle Beach Property (R5 Lot 18) | | | $ 25,000.00 | | $ 25,000.00 |
| **Total:** | | $ 436,797.84 | $ 58,400.00 | $ 9,900.00 | $ 48,500.00 |

**Less**

| | | | | | |
|---|---|---|---|---|---|
| Chapter 7 Auctioneer Fees - Personal Prop. | | | | | |
| 20% of first $20,000 | 20% | | $ 20,000.00 | | $ (4,000.00) |
| 10% of next $50,000 | 10% | | $ 38,400.00 | | $ (3,840.00) |
| 4% of Balance | 4% | | | | $ - |
| | | | | | |
| Trustee's Commission | | | | | |
| 25% of first $5,000 | 25% | | $ 5,000.00 | | $ (1,250.00) |
| 10% of next $5,000 to $50,000 | 10% | | $ 45,000.00 | | $ (4,500.00) |
| 3% of Balance | 3% | | $ 8,400.00 | | $ (252.00) |
| | | | | | |
| Chapter 11 Administrative Claims (est.) | | | | | $ (15,000.00) |
| | | | | | |
| Priority Claims | | | | | $ (46,842.46) |
| | | | | | |
| **Available for Unsecured Creditors of Stella Marie Beckhart** | | | | | $ 21,315.54 |

Gordon Haggot Beckhart, Jr. and Stella Marie Beckhart
Exhibit C- Liquidation Analysis Unsecured Creditors of Gordon Haggot Beckhart, Jr. and Stella Marie Beckhart

| ASSETS | LIENHOLDER | AMOUNT OF LIEN | MARKET VALUE | EXEMPTIONS | EQUITY |
|---|---|---|---|---|---|
| Real Property: | | | | | |
| 223 Corkscrew Drive, Breckenridge, CO | SREI Breck, LLC | $ 1,180,250.00 | $ 1,675,000.00 | $ 60,000.00 | $ 434,750.00 |
| 2702 Andromeda Drive, Colorado Springs, CO | | $ - | $ - | | $ - |
| 618 South 3rd Street, #1, Wilmington, NC | | $ - | $ 130,000.00 | | $ 130,000.00 |
| 1338 South Fort Fisher, Kure Beach, NC | Countrywide | $ 431,653.30 | $ 675,000.00 | | $ 155,410.51 |
| | Real Time Financial Agent for Countrywide | $ 87,936.19 | $ - | | |
| 1713 Spot Lane, Kure Beach, NC | Aurora Loan Services | $ 312,171.18 | $ 420,000.00 | | $ 107,828.82 |
| 609 and 611 Red Cross Streets, Wilmington, NC | | $ - | $ 50,000.00 | | $ 50,000.00 |
| 709 N. 4th 101, Wilmington, NC | Brooklyn House HOA | $ 3,043.00 | $ 250,000.00 | | $ 246,957.00 |
| 1346 South Fort Fisher, Kure Beach, NC | SunTrust Mortgage | $ 467,500.00 | $ 600,000.00 | | $ 132,500.00 |
| .33 acres (Lot 13 & 39), Riverside Drive, Sneads Ferry, NC | | $ - | $ 60,000.00 | | $ 60,000.00 |
| Total: | | $ 2,482,553.67 | $ 3,860,000.00 | $ 60,000.00 | $ 1,317,446.33 |
| | | | | | |
| Personal Property: | | | | | |
| Cash on hand (as of 06/30/09) | | | $ - | | $ - |
| Funds in DIP accounts (as of 06/30/2009) | | | $ - | | $ - |
| Accounts Receivable: Judgment Darron Sims ($25,583.68) | | | $ - | | $ - |
| Accounts Receivable: Judgment GDD, Inc. ($7,000.00) | | | $ - | | $ - |
| NWML Life Ins. Policy 13-995-293 (no cash value) | First Bank, successor to Cooperative Bank | $ 436,797.84 | $ - | | $ - |
| American General Life Ins. Co. Policy YMD7049472 (no cash value) | | | $ - | | $ - |
| Protective Life Corporation Policy DT0263649 (no cash value) | | | $ - | | $ - |
| Surfboard (NC); Bikes (NC, CO), Ski Equipment (CO) | | | $ 1,000.00 | $ 1,000.00 | $ - |
| Residence furnishings and household goods (NC Residence) | | | $ 4,000.00 | $ 1,000.00 | $ 3,000.00 |
| Residence furnishings and household goods (CO Residence) | | | $ 6,000.00 | $ 2,000.00 | $ 4,000.00 |
| Misc. clothing | | | $ 1,500.00 | $ 1,500.00 | $ - |
| Various Compact Discs | | | $ 400.00 | $ 400.00 | $ - |
| 100% Interest in Carolina Beach Lofts, LLC | | | $ 16,500.00 | | $ 16,500.00 |
| 1.25% Interest in Axia Capital Partners, LP (unknown value) | | | $ - | | $ - |
| 20% Interest in Fit-Fab Integrated Technology | | | $ - | | $ - |
| 1997 Infiniti QX4 (VIN JNRAR05Y1VW016835) | | | $ 4,000.00 | $ 4,000.00 | $ - |
| Deposit on Mrytle Beach Property (R5 Lot 18) | | | $ 25,000.00 | | $ 25,000.00 |
| Total: | | $ 436,797.84 | $ 58,400.00 | $ 9,900.00 | $ 48,500.00 |
| | | | | | |
| Less | | | | | |
| Chapter 7 Auctioner Fees Real Property | | | | | |
| 10% of first $25,000.00 | 10% | | $ 25,000.00 | | $ (2,500.00) |
| 4% of balance | 4% | | $ 3,835,000.00 | | $ (153,400.00) |
| | | | | | |
| Trustee's Commission | | | | | |
| 25% of first $5,000 | 25% | | $ 5,000.00 | | $ (1,250.00) |
| 10% of next $5,000 to $50,000 | 10% | | $ 45,000.00 | | $ (4,500.00) |
| 3% of balance | 3% | | $ 3,810,000.00 | | $ (114,300.00) |
| | | | | | |
| Chapter 7 Auctioner Fees - Personal Prop. | | | | | |
| 20% of first $20,000 | 20% | | $ 20,000.00 | | $ (4,000.00) |
| 10% of next $50,000 | 10% | | $ 38,400.00 | | $ (3,840.00) |
| 4% of Balance | 4% | | | | $ - |
| | | | | | |
| Trustee's Commission | | | | | |
| 25% of first $5,000 | 25% | | $ 5,000.00 | | $ (1,250.00) |
| 10% of next $5,000 to $50,000 | 10% | | $ 45,000.00 | | $ (4,500.00) |
| 3% of Balance | 3% | | $ 8,400.00 | | $ (252.00) |
| | | | | | |
| Chapter 11 Administrative Claims (est.) | | | | | $ (15,000.00) |
| | | | | | |
| Priority Claims | | | | | $ (46,842.46) |
| | | | | | |
| **Available for Joint Unsecured Creditors** | | | | | $ 1,062,811.87 |