UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| In the Matter of: | Chapter 11 |
| GORDON HAGGOTT BECKHART, JR. | Case No: 09-07452-8-SWH |
| STELLA MARIE BECKHART | |
|     Debtors | |

**MOTION FOR CONTEMPT AND SANCTIONS
AGAINST THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK
AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC. CHL
MORTGAGE PASS-THROUGH TRUST 2004-29, MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 2004-29 AND NEWREZ, LLC dba SHELLPOINT
MORTGAGE SERVICING**

Gordon Haggott Beckhart, Jr. and Stella Marie Beckhart (the "Debtors"), by and through undersigned counsel, respectfully move the Court, pursuant to §§ 105 and 1142 of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure 9020, for the entry of an order finding The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of CWMBS, Inc. CHL Mortgage Pass-Through Trust 2004-29, Mortgage Pass Through Certificates, Series 2004-29 ("BNYM") and NewRez, LLC dba Shellpoint Mortgage Servicing ("Shellpoint") in contempt of court and granting the Debtors appropriate sanctions against BNYM and Shellpoint for their egregious actions of repeatedly violating an order of this Court. In support of this motion, the Debtors show the Court the following:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(A) and (O).

2. On August 31, 2009, the Debtors filed a voluntary petition for relief pursuant to the provisions chapter 11 of the United States Bankruptcy Code (the "Petition Date").

3. On the Petition Date, the Debtors owned certain real property commonly known as 1338 South Fort Fisher Boulevard, Kure Beach, North Carolina 28449 (the "Property").

4. On January 13, 2010, the Debtors filed a Plan of Reorganization (the "Plan") which was confirmed by an Order Confirming Plan entered on December 1, 2010 (the "Confirmation Order") [Doc. No. 190].

5. The Property was properly scheduled and the then holder of the obligation encumbering the Property, Real Time Resolutions, was treated in Class 7 of the Plan[1] and incorporated by reference into Confirmation Order. The treatment for Class 7 provided that Real Time Resolutions would receive the following treatment for the Property:

> The above claim shall be treated as a secured obligation of the Debtor Gordon H. Beckhart, Jr. in an amount equal to the lesser of: (1) the value of the property which secures the debt; or (2) (a) all outstanding principal and interest due on the petition date; plus (b) any interest, costs and expenses which may be approved by the Court pursuant to Section 506(b). The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the secured claim is paid.
>
> The Debtor Gordon H. Beckhart, Jr. shall have a period not to exceed eighteen months from the Effective Date ("Marketing Period") in which to liquidate the collateral securing the claim. During this time period, the Debtor Gordon H. Beckhart, Jr. shall pay to the creditor the net proceeds of the sale of the property, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the property. The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of 3.875& per annum. During this time period, the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee. If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of 3.875% per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

Plan, p. 9.

---

[1] Only the male Debtor is obligated on this loan; however, throughout this motion reference will be made to both Debtors because their case is a joint filing.

6. The Effective Date of the Plan was December 15, 2010, which was fourteen (14) days after the Confirmation Order was entered.

7. On April 30, 2013, the Court entered a Final Decree [Doc. No. 331] in this case.

8. Shellpoint began servicing the obligation related to the Property on June 15, 2014. Prior to Shellpoint, Bank of America was servicing the obligation.

9. The Debtors have made on time monthly payments on the obligation owed to BNYM and treated in Class 7 of the Plan since the Effective Date. Some of the payments exceeded the minimum payment amount. BNYM and its servicers, including Shellpoint, have not complied with the terms of the Confirmation Order.

10. Shellpoint's failure to properly service the Debtor's obligation first became an issue shortly after Shellpoint began servicing the obligation.

11. Initially, Mr. Beckhart reached out to Shellpoint directly. Shellpoint refused to discuss the issues with Mr. Beckhart because he had previously filed for bankruptcy protection. On numerous occasions, Shellpoint hung up on Mr. Beckhart, which frustrated his efforts to correct his account.

12. In July of 2015, Shellpoint began sending Notices of Default and Intent to Accelerate, which provided that if the alleged default was not cured within forty-five days of the notice then Shellpoint intends to, *inter alia*, foreclose on the Property. On or about July 24, 2015, Shellpoint sent a Notice of Default and Intent to Accelerate, which alleged that the obligation was in default in the amount of $64,873.72.

13. On or about August 21, 2015, after the undersigned spoke to multiple Shellpoint representatives and left voicemail messages for A. Fisher, a Shellpoint representative working in the bankruptcy department, Shellpoint sent another Notice of Default and Intent to Accelerate.

The August 21, 2015 notice alleged that the obligation was in default in the amount of $64,873.72.

14. After several attempts to call and speak with a Shellpoint representative, the undersigned wrote to Shellpoint on September 1, 2015. In the September 1, 2015 letter, the undersigned explained why the obligation related to the Property was not in default, requested that Shellpoint correct its accounting, and if Shellpoint did not correct its records that the Debtors would reopen their bankruptcy case and seek sanctions. Shellpoint never responded to the September 1, 2015 letter.

15. On or about September 9, 2015, Shellpoint sent another Notice of Default and Intent to Accelerate, which alleged that the obligation was in default in the amount of $67,792.20.

16. On October 30, 2015, the undersigned sent a second letter to Shellpoint in an effort to avoid the expense of reopening the Debtors' bankruptcy case, which requested that Shellpoint rescind the Notice of Default and Intent to Accelerate dated July 24, 2015 and correct its reporting to the credit reporting agencies that noted Mr. Beckhart's account was "closed-derogatory."

17. On or about November 6, 2015, Shellpoint returned the Debtors monthly payment because, they alleged, the Debtors account was more than ninety days delinquent.

18. Between November 2015 and March 2016, the Debtors made the required monthly payments and Shellpoint accepted the payments. Upon information and belief, Shellpoint stopped sending Notices of Default and Intent to Accelerate in September of 2015 until September of 2019.

19. On or about April 7, 2016, Shellpoint sent a letter to George Oliver, as bankruptcy counsel for the Debtors, a letter. The April 7, 2016 letter stated that it was in response to Mr.

Beckhart's letter dated January 7, 2015 and that Shellpoint could not directly address Mr. Beckhart because of an "active bankruptcy filing." A loan transaction history was enclosed with the letter, which shows payments being made but marked as unapplied and the assessment of late charges and property inspection assessments.

20. On July 7, 2016, BNYM filed a Transfer of Claim Other Than for Security [Doc. No. 337], which provided that BNYM transferred the obligation related to Claim No. 29 to BAC Home Loans Servicing, LP fka Countrywide Home [Loans]. The Transfer further provided that notices should be sent to Shellpoint Mortgage Servicing at PO Box 10826, Greenville, SC 29603-0826.

21. On or about January 5, 2018, Shellpoint sent a notice to the Debtors that indicated the principal balance owed on the obligation was $393,155.25. That amount does not properly credit the Debtors for all of the payments made since the Effective Date. Further, the notice provided that a single point of contact, Bruce Martinez, had been assigned to their account.

22. On or about July 5, 2018, Shellpoint sent notice to the Debtors that indicated the principal balance owed on the obligation was $384,606.60. Again, that amount does not properly credit the Debtors for all of the payments made since the Effective Date. The July 5, 2018 notice also provided that Antonia Buchanan had been assigned as the single point of contact on the account.

23. On October 18, 2019, the Debtors reopened their bankruptcy case. See Doc. No. 341.

24. On or about September 16, 2019, Shellpoint sent another Notice of Default and Intent to Accelerate, which alleged that the obligation was in default in the amount of $71,583.50. Notably, this notice also stated that there was an unapplied balance on the Debtors' account of $1,507.69.

25. On November 26, 2019, the Debtors mailed a qualified written request pursuant to the Real Estate Settlement and Procedure Act and the Dodd-Frank Act, which explained the errors in Shellpoint's accounting of the obligation secured by the Property, that Shellpoint was not abiding by the terms of the Confirmation Order, that there were improper fees and costs taxed to their account, and Shellpoint's returning of their monthly payments was improper because they were not in default.

26. On December 11, 2019, Shellpoint responded on behalf of itself and BNYM. In that letter, Shellpoint summarized the complaint made by the Debtors in the November 26, 2019 letter. Notably, Shellpoint also stated that its bankruptcy department "completed a detailed review of the Chapter 11 Plan and Order Confirming Plan and determined that the previous servicer did not adjust the loan in accordance with the Confirmed Chapter 11 Plan." The response went on to say, "[a]t present, our Bankruptcy team is completing a review and audit of the loan back to November 25, 2010 to ensure the payments from that date to present have been properly posted." In concluding the letter, Julia Reynolds, a representative of Shellpoint's compliance department, asked the Debtors to "accept [Shellpoint's] sincere apologies for any inconvenience regarding the servicing of the loan per the confirmed Chapter 11 Plan."

27. On December 14, 2019, Christopher Giacinto of the Padgett Law Group filed a notice of appearance in this case on behalf of BNYM [Doc No. 353].

28. On January 9, 2020, Mr. Beckhart visited the Property and found a Notice of Hearing on Foreclosure of Deed of Trust dated December 23, 2019, which provided that there would be a foreclosure hearing at the New Hanover County Courthouse on January 28, 2020 at 11:00am.

29. Shellpoint filed the Notice of Hearing on Foreclosure a mere twelve days after it told Mr. Beckhart, in writing, that the foreclosure action had been placed on hold. Further, prior

to the Notice of Hearing on Foreclosure, Shellpoint did not provide the Debtors with the findings of the review and audit performed by its bankruptcy team as it said it would do in its December 11, 2019 letter.

30. BNYM and its agent Shellpoint have violated the Confirmation Order by: (i) failing to update their records in accordance with the terms of the Confirmation Order, (ii) not properly crediting the Debtors with the payments made, (iii) improperly reporting that the Debtors' account was closed and delinquent, (iv) repeatedly sending the Debtors notice of default and threatening foreclosure, (v) initiating at least one foreclosure action based on their improper records, and (vi) assessing excessive late charges and inspection fees, which were unwarranted because the Debtors had made the requisite payments.

31. Shellpoint acknowledged the errors in its accounting of the Debtors' loan in its December 11, 2019 letter

32. As a result of BNYM and Shellpoint's failure to comply with the Confirmation Order, the Debtors have expended great time in trying to correct their account and incurred damages including loss of their fresh start, increased tax liability, attorneys' fees, and accountant fees.

33. If the foreclosure action is permitted to go forward, the Debtors will suffer irreparable harm, at no fault of their own.

WHEREFORE, the Debtors pray that the Court enter an order:

1. Enjoining BNYM and Shellpoint from moving forward with the foreclosure hearing scheduled for January 28, 2020;

2. Imposing sanctions against BNYM and Shellpoint for their willful violations of the Confirmation Order;

3. Requiring BNYM and Shellpoint, jointly and severally, to pay the Debtors' legal fees and costs associated with prosecuting this motion; and,

4. For such other and further relief as the Court may deem just and proper.

This the 23rd day of January, 2020.

                                                The Law Offices of Oliver & Cheek, PLLC

By:    s/Ciara L. Rogers
        Ciara L. Rogers
        N.C. State Bar No. 42571
        Email:  ciara@olivercheek.com
        George M. Oliver
        N.C. State Bar No. 26587
        Email: george@olivercheek.com
        Post Office Box 1548
        New Bern, NC  28563
        Telephone: (919) 987-2024
        Facsimile:  (252) 633-1950
        *Attorneys for the Debtor*