PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1838

GORDON HAGGOTT BECKHART, JR.; STELLA MARIE BECKHART,

        Debtors - Appellants,

    v.

NEWREZ LLC, d/b/a Shellpoint Mortgage Servicing; THE BANK OF NEW YORK MELLON, f/k/a The Bank of New York as Trustee for Certificate Holders of CWMBS, Inc. CHL Pass-Through Trust 2004-29, Mortgage Pass-Through Certificates, Series 2004-9,

        Creditors - Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. Terrence W. Boyle, District Judge. (7:20-cv-00192-BO)

Argued: March 10, 2022                                              Decided: April 15, 2022

Before AGEE, RUSHING, and HEYTENS, Circuit Judges.

Vacated and remanded with instructions by published opinion. Judge Heytens wrote the opinion, in which Judge Agee and Judge Rushing joined.

**ARGUED:** Ciara Louise Rogers, LAW OFFICES OF OLIVER & CHEEK, PLLC, New Bern, North Carolina, for Appellants. Richard Aaron Chastain, BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, Alabama, for Appellees. **ON BRIEF:** Brian M. Rowlson, BRADLEY ARANT BOULT CUMMINGS LLP, Charlotte, North Carolina, for Appellees.

TOBY HEYTENS, Circuit Judge:

In *Taggart v. Lorenzen*, the Supreme Court addressed the proper standard for "hold[ing] a creditor in civil contempt for attempting to collect a debt that a discharge order" entered under Chapter 7 of the Bankruptcy Code "has immunized from collection." 139 S. Ct. 1795, 1799 (2019). The threshold question here is whether the standard adopted in *Taggart* also applies when a court is considering whether to hold a creditor in civil contempt for violating a plan of reorganization of debts entered under Chapter 11. We hold that it does. And because neither the bankruptcy court nor the district court properly applied the *Taggart* standard here, we vacate and remand for further proceedings.

I.

In 2009, Gordon and Stella Beckhart filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, a form of bankruptcy that "allows debtors and their creditors to negotiate a plan for dividing an estate's value." *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 978 (2017). At the time, the Beckharts owned several properties that had mortgages with significant balances, including a house in Kure Beach, North Carolina, for which they had missed ten months of payments.

After a hearing, the bankruptcy court confirmed a reorganization plan for the Beckharts' debts. Under the confirmation order, the Beckharts maintained possession of the Kure Beach house, with the creditor retaining a secured claim for the total outstanding mortgage balance. The order set a date on which "[t]he first payment shall be due" but did not specify an amount for the payment or state how it would be calculated. JA 68–69. The order also provided that, "[i]n the event of default," the Beckharts would be entitled to "ten

2

days written notice" before the creditor could "exercise its state court remedies with respect to the collateral," including foreclosure. JA 68–69. The relevant section of the confirmation order concluded: "Except as modified herein, the Debtor shall continue to pay the creditor's claim according to the original loan terms." JA 69.

Several years later, appellees (collectively, Shellpoint) took over as loan servicer on the Beckharts' account. Although the Beckharts had been making regular monthly payments under the confirmation order, Shellpoint initially believed the account was past due because of the payments missed before the bankruptcy proceedings. From 2014 through 2019, Shellpoint sent the Beckharts letters and notices of default showing increasing amounts owed and past due. Gordon tried without success to correct the account, repeatedly explaining that he and Stella had been through bankruptcy and had been paying the mortgage on time ever since.

Shellpoint acknowledged in December 2019 that "the previous servicer did not adjust the loan in accordance with the Confirmed Chapter 11 Plan." JA 300. Nevertheless, two weeks later, Shellpoint commenced foreclosure proceedings on the Beckharts' Kure Beach house. Soon after, Shellpoint sent another letter acknowledging that the loan had not been adjusted following the bankruptcy proceedings and detailing the "major adjustments to the loan structure and to the payment applications" it had made to correct the account. JA 314. The letter did not, however, mention the pending foreclosure proceeding or the upcoming court hearing.

Seeking to halt the foreclosure proceeding—which they learned about only when Gordon found a notice on the door of the Kure Beach house—the Beckharts filed an

3

emergency motion for contempt in the bankruptcy court. According to the Beckharts, Shellpoint had violated the confirmation order by placing their account in default and seeking to foreclose on the property when the Beckharts had been paying on time since the bankruptcy. Shellpoint claimed that its actions were justified under the confirmation order and, alternatively, that the terms of the order were confusing and ambiguous, meaning it could not be held in civil contempt under the Supreme Court's decision in *Taggart*.

After hearing argument and testimony, the bankruptcy court found Shellpoint in contempt and awarded sanctions to the Beckharts. Without referencing *Taggart*, the bankruptcy court stated that "[a] finding of civil contempt is warranted when there is demonstration, by clear and convincing evidence, of" four factors set out in this Court's pre-*Taggart* decision in *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000). JA 17–18. The bankruptcy court ordered Shellpoint to pay the Beckharts a total of $114,569.86, consisting of: (1) $60,000 in damages for 200 hours Gordon spent trying to correct the account; (2) $20,000 for "the loss of the debtors' fresh start"; (3) $1,569.86 in travel expenses; and (4) $33,000 in attorneys' fees. JA 18–20.

Shellpoint appealed the contempt order to the district court, which reversed. See 28 U.S.C. § 158(a)(1) (granting district courts appellate jurisdiction over "final judgments, orders, and decrees" of bankruptcy courts). Concluding that "the *Taggart* standard" applied, the district court determined that "the bankruptcy court's contempt order f[ell] far short of meeting" it because Shellpoint "ha[d] established a fair ground of doubt with regard to the unclear terms of the confirmation order." JA 358. In so ruling, the district

4

court pointed to what it viewed as "undisputed evidence" that Shellpoint "acted in good faith," including Shellpoint's reliance "on the advice of outside counsel." JA 358–59.

II.

Seeking to reinstate the bankruptcy court's contempt order, the Beckharts argue both that *Taggart* does not apply to violations of Chapter 11 confirmation orders and that the bankruptcy court correctly applied the *Taggart* standard in any event. We find both arguments unpersuasive.

Nothing about the Supreme Court's analysis in *Taggart* suggests it is limited to violations of Chapter 7 discharge orders—which liquidate a debtor's assets and then discharge the debt—or that the Court's decision turned on considerations unique to the Chapter 7 context. The Court began its discussion with general provisions of the Bankruptcy Code providing that a discharge order "operates as an injunction," 11 U.S.C. § 524(a)(2), and that a court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," § 105(a). See *Taggart*, 139 S. Ct. at 1801. These general statutory terms, the Court concluded, incorporate "traditional principles of equity practice" that have "long governed how courts enforce injunctions," including "the potent weapon of civil contempt." *Id.* (quotation marks omitted). For that reason, the Court emphasized that "[t]he bankruptcy statutes . . . do not grant courts unlimited authority to hold creditors in civil contempt." *Id.* Drawing on "cases outside the bankruptcy context," the Court explained that the standard for civil contempt "is generally an *objective* one" and that such orders are inappropriate "where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *Id.* at 1801–02 (quotation marks

5

and brackets omitted). Concluding that "[t]hese traditional civil contempt principles apply straightforwardly to the bankruptcy discharge context," the Court held that the same standard applied to the case before it. *Id.* at 1802, 1804.

We hold that the standard articulated by the Supreme Court in *Taggart* governs civil contempt under Chapter 11 of the Bankruptcy Code as well. The Beckharts may be right that Chapter 11 reorganization proceedings differ in many ways from Chapter 7 liquidations. But a bankruptcy court's authority to enforce its own orders—regardless of which chapter of the Bankruptcy Code those orders were issued under—derives from the same statutes and the same general principles the Supreme Court relied on in *Taggart*. And those principles make clear that the logic of *Taggart* applies broadly and cannot be confined to Chapter 7 bankruptcy in the way the Beckharts seek.

We likewise disagree with the Beckharts' assertion that the bankruptcy court actually applied the *Taggart* standard in finding Shellpoint in contempt. Although *Taggart* was discussed at the contempt hearing, the court's written order does not mention *Taggart* or its no-fair-ground-of-doubt standard. Rather, the bankruptcy court's order states that "[a] finding of civil contempt is warranted when there is a demonstration . . . of" four factors discussed by this Court in a decision that long predated *Taggart* and did not even involve bankruptcy. JA 17–18 (citing *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)). For that reason, we cannot conclude the bankruptcy court applied the correct legal standard in deciding to hold Shellpoint in contempt.

At the same time, we disagree with Shellpoint's assertion that the district court committed no error in overturning the bankruptcy court's contempt order. For one thing,

6

the district court erred in appearing to grant controlling weight to the fact that Shellpoint had requested and received legal advice from outside counsel. JA 359 (asserting that "[t]he Fourth Circuit has stated that relying on the advice of outside counsel is a sufficient defense to the imposition of civil sanctions" while citing only a single district court decision involving a request for Rule 11 sanctions against a then-unrepresented party). But this Court had squarely held—long before *Taggart*—that advice of counsel "*is not a defense*" to "civil contempt." *In re Walters*, 868 F.2d 665, 668 (4th Cir. 1989) (emphasis added). And *Taggart* reaffirmed this approach when explaining that "[t]he absence of wilfulness does not relieve from civil contempt." 139 S. Ct. at 1802 (quotation marks omitted). As a result, the district court erred when concluding that Shellpoint's reliance on the advice of outside counsel was seemingly dispositive as a defense to civil contempt.[*]

Having concluded that both the bankruptcy court and the district court erred in analyzing the threshold question of whether Shellpoint may be held in civil contempt at all, we decline to address Shellpoint's more targeted objections to certain aspects of the bankruptcy court's sanctions order. Instead, we think it is most appropriate for the bankruptcy court—as the court of first instance and the tribunal closest to the facts—to

---

[*] We briefly note that while relying on the advice of outside counsel is not a complete defense in and of itself, it may still be considered in appropriate circumstances as a relevant factor under the *Taggart* standard. Although *Taggart* established that "a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable," a party's reliance on guidance from outside counsel may be instructive, at least in part, when determining whether that party's belief that she was complying with the order was objectively unreasonable. 139 S. Ct. at 1802. We leave any such analysis to be completed by the bankruptcy court in the first instance on remand.

reconsider the contempt motion under the correct legal standard, including any additional factfinding that may be necessary. In doing so, we emphasize that even though the appropriate remedy for civil contempt lies within the bankruptcy court's "broad discretion," *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995), any sanction that may ultimately be imposed must be supported—both in type and in amount—by a sufficient evidentiary record.

*    *    *

The order of the district court is vacated, and the case is remanded to the district court with instructions to vacate the bankruptcy court's order and remand for further proceedings consistent with this opinion.

*SO ORDERED*

8